Wanda J. SCHMIDGALL,
Petitioner, Appellant,

v.

FILMTEC CORP, Respondent,

Commissioner of Economic
Security, Respondent.

No. C8-01-4.

Supreme Court of Minnesota.

May 23, 2002.

Douglas A. Hedin, Elizabeth A. Glidden, Hedin & Goldberg, P.A., Minneapolis, for Appellant.

Chad W. Strathman, Marko J. Mrkonich, Littler Mendelson, P.C., Minneapolis, for Respondent, FilmTec.

Philip B. Byrne, Kent E. Todd, Minnesota Department of Economic Security, Saint Paul, for Respondent, Commissioner.

O P I N I O N

RUSSELL A. ANDERSON, Justice.

Wanda J. Schmidgall was discharged from employment with FilmTec Corporation for violating FilmTec's same-shift injury reporting policy. She was denied unemployment benefits by the Commissioner, Department of Economic Security, because she was discharged for employment misconduct. The court of appeals affirmed. Because we conclude under the facts of this case that Schmidgall's conduct constituted employment misconduct, we affirm.

I.

FilmTec is a manufacturing company that produces a thin film composite membrane or "element" used in water purification systems. Schmidgall was employed by FilmTec from June 3, 1999, through July 14, 2000, when she was discharged for violating FilmTec's safety policy requiring that employees report any accident or injury to their supervisor and the site safety coordinator during the same shift in which it occurs.[1] FilmTec's employee handbook sets forth the reporting policy, which provides:

Any accident occurring at work must be reported to your supervisor and the site Safety Coordinator during the shift the incident occurs. First aid may be rendered or you may be sent to a physician for treatment. All injuries, no matter how slight, must be reported so that:

1. You are assured of getting proper medical attention.

2. A complete record of all accidents is maintained for review and evaluation.

3. You are protected by Worker's Compensation Insurance for work related injuries.

(Emphasis in original.) Schmidgall received a copy of the employee handbook during new employee orientation, as do all new employees.

On September 22, 1999, at the end of her shift, Schmidgall injured her shoulder and back as she was in the process of leaving the employer's premises. The next day, she filed a report of the injury. Her employer determined that her report was late and coached her on the importance of reporting any injury to supervision immediately. On May 22, 2000, Schmidgall again injured her back at work. Although there were approximately four and one-half hours remaining on her shift, she did not report the injury until the next day. She was given a written warning for violating the same-shift reporting policy, which she refused to sign, and cautioned that a failure to abide by company policy could result in termination of employment.

On Wednesday, July 5, 2000, Schmidgall again injured her back at work shortly before lunch while working at a cutting table. When her back pain increased following lunch, she stopped her work at the cutting table and instead performed light-duty tasks until the end of the shift, which was at 2:30 p.m. When her back did not improve overnight, she returned to work the next day and reported the injury to her supervisor, who sent her home. She called in sick the next day and the following Monday when she went to see a doctor

1. After an accident or an injury is reported, FilmTec conducts a "root cause investigation" to determine the cause of the accident or injury and to prevent recurrence.

for her back. She returned to work on Tuesday, July 11, 2000, and completed a written report of her injury. She was suspended and, following review by management, she was discharged for violating the reporting policy. On this evidence the commissioner determined Schmidgall was disqualified from the receipt of unemployment benefits because of employment misconduct. The court of appeals affirmed. *Schmidgall v. FilmTec Corp.*, No. C8–01–4, 2001 WL 800048, at *1 (Minn.App. July 17, 2001).

## II.

■ The issue before us is whether the record supports the commissioner's determination that Schmidgall was discharged for employment misconduct and was therefore disqualified from receiving unemployment benefits because she had been discharged for violations of an employment policy requiring the report of any injury during the shift in which it occurred. We review the commissioner's factual findings in the light most favorable to the commissioner's decision and will not disturb them as long as there is evidence that reasonably tends to sustain those findings. *Ress v. Abbott Northwestern Hosp., Inc.*, 448 N.W.2d 519, 523 (Minn. 1989). Whether an employee engaged in conduct that disqualifies the employee from unemployment benefits is a mixed question of fact and law. *See Colburn v.*

*Pine Portage Madden Bros., Inc.*, 346 N.W.2d 159, 161 (Minn.1984). Whether a particular act constitutes disqualifying misconduct is a question of law, which this court reviews de novo. *Ress*, 448 N.W.2d at 523.

■ Misconduct for disqualification purposes is "any intentional conduct, on the job or off the job, that disregards the standards of behavior that an employer has the right to expect of the employee or disregards the employee's duties and obligations to the employer." Minn.Stat. § 268.095, subd. 6(a) (2000). Employment misconduct is also "negligent or indifferent conduct, on the job or off the job, that demonstrates a substantial lack of concern for the employment." *Id.* As a general rule, refusing to abide by an employer's reasonable policies and requests amounts to disqualifying misconduct. *See McGowan v. Executive Express Transp. Enters., Inc.*, 420 N.W.2d 592, 596 (Minn.1988).

■ Schmidgall argues that FilmTec's reporting requirement is unreasonable, undermining the policies embedded in the Workers' Compensation Act that allow a claimant 30 days to furnish an employer with notice of a work injury and that also temper the harshness of a statutory bar to compensation by recognizing a variety of excuses for a delay in giving notice. *See* Minn.Stat. § 176.141 (2000);[2] *Freyholtz v. Blackduck Sch. Dist. No. 32,*

---

**2.** Minnesota Statutes § 176.141 provides:

Unless the employer has actual knowledge of the occurrence of the injury or unless the injured worker, or a dependent or someone in behalf of either, gives written notice thereof to the employer within 14 days after the occurrence of the injury, then no compensation shall be due until the notice is given or knowledge obtained. If the notice is given or the knowledge obtained within 30 days from the occurrence of the injury, no want, failure, or inaccuracy of a notice shall be a bar to obtaining compensation unless the employer shows prejudice by

such want, defect, or inaccuracy, and then only to the extent of the prejudice. If the notice is given or the knowledge obtained within 180 days, and if the employee or other beneficiary shows that failure to give prior notice was due to the employee's or beneficiary's mistake, inadvertence, ignorance of fact or law, or inability, or to the fraud, misrepresentation, or deceit of the employer or agent, then compensation may be allowed, unless the employer shows prejudice by failure to receive the notice, in which case the amount of compensation shall be reduced by a sum which fairly represents the prejudice shown. Unless

613 N.W.2d 757, 758 (Minn.2000). Specifically, she argues that even minor deviations from the same-shift reporting policy effectively compel employees with legitimate work injuries to choose between claiming workers' compensation benefits and maintaining employment. FilmTec argues that its reporting policy is reasonable in that it assures proper medical attention, provides a complete record of all accidents, and facilitates the assertion of workers' compensation rights through prompt notice of injury to the employer. The workers' compensation notice requirement is aimed at enabling the employer to furnish immediate medical attention in the hope of minimizing the seriousness of the injury and protecting the employer by permitting an investigation of the claim soon after the injury. *Kling v. St. Barnabas Hosp.*, 291 Minn. 257, 261, 190 N.W.2d 674, 677 (1971). In view of the purposes of

FilmTec's policy as articulated within the policy statement itself, as well as the policy's practical effect of assuring workplace safety by allowing FilmTec to immediately identify and address hazardous conditions endangering other employees, we cannot say that FilmTec's same-shift reporting policy is facially unreasonable.[3]

At the same time, we understand there may be situations in which delay in furnishing notice of injury within the time constraints of the same shift ought to be excused, such as a failure to recognize an injury in its early or latent stage. It is at least arguable that what FilmTec determined to be a day-late notice as to Schmidgall's first injury might have been excusable. But FilmTec did not terminate Schmidgall's employment until after she failed to make a timely report of the third injury, following individual instruction and written warning.[4] On the limited record

knowledge is obtained or written notice given within 180 days after the occurrence of the injury no compensation shall be allowed, except that an employee who is unable, because of mental or physical incapacity, to give notice to the employer within 180 days from the injury shall give the prescribed notice within 180 days from the time the incapacity ceases.

3. The dissent asserts that our decision undercuts the provisions of the Workers' Compensation Act, and that FilmTec's same-shift injury reporting policy effectively eviscerates Minn.Stat. § 176.141. Our decision, however, is concerned not with workers' compensation benefits but with unemployment benefits. Our decision should not be construed to limit an injured employee's right to recover workers' compensation benefits when the employee complies with the requirements of section 176.141. Indeed, in this case Schmidgall received workers' compensation benefits covering claimed medical expenses.

The dissent also misconstrues the purpose of the notice provision of section 176.141, stating simply that it gives employees 30 days to report workplace injuries. Section 176.141 provides a limitations period that protects the employer against claims too old to be successfully investigated and defended.

See *Pojanowski v. Hart*, 288 Minn. 77, 80–81, 178 N.W.2d 913, 916 (1970) ("The notice requirement [of Minn.Stat. § 176.141] is designed to enable the employer to furnish immediate medical attention in the hope of minimizing the seriousness of the injury as well as to protect the employer by permitting him to investigate the claim soon after the injury."); *Rinne v. W.C. Griffis Co.*, 234 Minn. 146, 150, 47 N.W.2d 872, 875 (1951) ("The purpose of the requirement of actual knowledge or notice is to permit the employer to make such investigation as is necessary to determine liability as to a claim."); *see generally* Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 126.01 (2001). A requirement that an employee report an injury as soon as is practicable in order to ensure workplace safety and accurate reporting of injuries need not be inconsistent with the notice requirements of Minn.Stat. § 176.141.

4. Schmidgall has also argued that she did not on three occasions violate the same-shift reporting policy, and she therefore could not have engaged in employment misconduct. We note simply that there is evidence in the record to support the determination that Schmidgall violated the same-shift reporting

presented here, we cannot conclude that FilmTec's same-shift reporting policy was unreasonable in its application.[5]

Finally, relying on *Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (1973), Schmidgall argues her failure to make immediate reports of injury was not employment misconduct because she did not have the requisite culpability. Although not raised below, the commissioner argues that *Tilseth* is superseded by Minn.Stat. § 268.095, subd. 6 (2000), which, the commissioner says, contemplates a less restrictive standard that focuses on the nature of the conduct and not on the culpability of the employee, and that in any event, the conduct in this case did amount to disqualifying misconduct under *Tilseth* and its progeny. Because we conclude Schmidgall was disqualified for misconduct under *Tilseth*, we need not reach whether *Tilseth* has been superseded by subsequent legislation, an issue decided by the court of appeals in *Houston v. Int'l Data Transfer Corp.*, No. C1–00–2151, 2001 WL 856262, at *2 (Minn.App.), *rev. granted* (Minn. Sept. 25, 2001).

Under *Tilseth*, misconduct "is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee * * *." *Tilseth*, 295 Minn. at 374–75, 204 N.W.2d at 646. We have said that the issue is not whether the employer can choose to terminate the employment relationship, but rather "whether, now that [the employee has been] terminated, there should be unemployment compensation, a determination which focuses on the willfulness of the [employee's] behavior." *Auger v. Gillette Co.*, 303 N.W.2d 255, 257 (Minn. 1981). "Because the nature of an employer's interest will vary depending upon the job, what constitutes disregard of that interest, and therefore misconduct, will also vary." *Id.*

A single incident can constitute misconduct when an employee deliberately chooses a course of conduct that is adverse to the employer. *Ress*, 448 N.W.2d at 524 (citing *Colburn*, 346 N.W.2d at 161). When an employee's refusal to carry out a directive of the employer is deliberate, calculated, and intentional, then the refusal is misconduct. *McGowan*, 420 N.W.2d at 596. Consistent with *McGowan*, an employee's decision to violate knowingly a reasonable policy of the employer is misconduct. *See, e.g., Sandstrom v. Douglas Mach. Corp.*, 372 N.W.2d 89, 91 (Minn. App.1985). This is particularly true when there are multiple violations of the same rule involving warnings or progressive dis-

---

policy following the second injury, which she does not dispute, as well as the third injury, which was the basis for her termination.

5. The dissent asserts that "FilmTec's policy of terminating employees for failing to timely report work-related injuries under its policy appears to violate Minn.Stat. § 176.82 (2000)," the workers' compensation retaliatory discharge provision. A section 176.82 retaliatory discharge claim, however, is a common law cause of action outside the purview of the Workers' Compensation Act, *Karnes v. Quality Pork Processors*, 532 N.W.2d 560, 563 (Minn.1995), and it requires proof of retaliatory motive. Schmidgall brought a separate

retaliatory discharge claim, the district court granted FilmTec's motion for summary judgment, and Schmidgall appealed to the court of appeals. *Schmidgall v. FilmTec Corp.*, No. CX–01–1722, 2002 WL 655680, at *1 (Minn. App. Apr. 23, 2002). The court of appeals concluded that the district court improperly granted summary judgment and remanded. *Id.*

We by no means imply that FilmTec's policy would be reasonable in every circumstance. Certainly if there were any evidence that a same-shift reporting policy were being used to circumvent an employer's legal obligations, we would take a different view of the reasonableness of the policy.

cipline. *Gilkeson v. Indus. Parts & Serv., Inc.*, 383 N.W.2d 448, 452 (Minn.App.1986) (concluding that employee's conduct was misconduct when he engaged in pattern of failing to follow policies and procedures and ignoring directions and requests); *Campbell v. Minneapolis Star & Trib. Co.*, 345 N.W.2d 803, 805 (Minn.App.1984) (concluding that repeated violations of employer's work rules and neglect of job responsibilities demonstrated employment misconduct); *Evenson v. Omnetic's*, 344 N.W.2d 881, 883 (Minn.App.1984) (concluding that continued tardiness after several warnings was disqualifying misconduct).

FilmTec has a clear and substantial interest in maintaining a safe workplace. *See Wicken v. Morris*, 527 N.W.2d 95, 99 (Minn.1995) ("The duty to provide employees with a safe workplace is a non-delegable duty held by the employer.") Under the facts as presented in this case, Schmidgall's pattern of failing to comply with the injury reporting policy evinced a willful disregard of this interest. In reviewing the record and findings of the commissioner, we conclude that Schmidgall was disqualified from the receipt of unemployment compensation for employment misconduct in connection with violations of the employer's same-shift injury reporting policy.

Affirmed.

PAGE, Justice (dissenting).

I respectfully dissent. Although this case concerns entitlement to unemployment benefits, the court's resolution undercuts the provisions of the Minnesota Workers' Compensation Act, *see* Minn. Stat. § 176.141 (2000). Section 176.141 provides:

If the notice is given or the knowledge obtained within 30 days from the occurrence of the injury, no want, failure, or inaccuracy of a notice shall be a bar to obtaining compensation [under the Workers' Compensation Act] unless the employer shows prejudice by such want, defect, or inaccuracy, and then only to the extent of the prejudice.

In essence, section 176.141 gives employees 30 days to report workplace injuries.

"Rights, remedies and obligations of employers, their insurers and employees concerning compensation for work-related injuries are governed by legislative enactment." *McClish v. Pan–O–Gold Baking Co.*, 336 N.W.2d 538, 544 (Minn.1983). By requiring employees to report injuries during their shifts, FilmTec has effectively eviscerated section 176.141. The fact that FilmTec may have a laudable reason for a shorter reporting period does not permit it to ignore section 176.141 and establish an inconsistent reporting requirement. *See In re Estate of Karger*, 253 Minn. 542, 548, 93 N.W.2d 137, 142 (1958) ("What the law ought to be is for the legislature * * *."). By its decision today, the court condones that evisceration.[1]

While the policy behind FilmTec's shortened reporting period for work-related injuries may be reasonable, neither the employer nor this court have the authority to change or interfere with the legislature's duly enacted timeframe for reporting work-related injuries. Whether that timeframe should be shortened is a policy question best left to the legislature. If the legislature desires to shorten the timeframe, it certainly may do so. *See Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 469, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981) (" '[I]t is up to legislatures, not

---

1. The court concedes that FilmTec's policy may not be reasonable in every circumstance. Thus, under the court's view, it is permissible to violate the statute under some circumstances, but not permissible under others.

courts, to decide on the wisdom and utility of legislation.'") (quoting *Ferguson v. Skrupa,* 372 U.S. 726, 729, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963)). But it has not.

In addition to being in conflict with the protections the legislature set out in section 176.141, FilmTec's policy of terminating employees for failing to timely report work-related injuries under its policy appears to violate Minn.Stat. § 176.82 (2000). Section 176.82 provides:

> Any person *discharging* or threatening to discharge an employee for seeking workers' compensation benefits or *in any manner intentionally obstructing an employee* seeking workers' compensation benefits is liable in a civil action for damages incurred by the employee * * *.

(Emphasis added.) In this case, Schmidgall's employment was terminated for engaging in conduct expressly permitted by section 176.141. The chilling effect this decision will have on employees exercising their rights under the Workers' Compensation Act will be substantial.

Because Schmidgall reported her work-related injuries to her employer, consistent with the timeframe permitted under section 176.141, I conclude that she is not disqualified from receiving unemployment compensation for misconduct as that term is used in Minn.Stat. § 268.095, subd. 6(a) (2000).