Blayne BRISSON, Relator,

v.

CITY OF HEWITT, Respondent,

Department of Employment and Economic Development, Respondent.

No. A10–351.

Court of Appeals of Minnesota.

Nov. 2, 2010.

Blayne Brisson, Bertha, Minnesota (pro se relator).

Daniel T. Carlisle, Carlisle Law Office, Wadena, Minnesota (for respondent City of Hewitt).

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department).

Considered and decided by HUDSON, Presiding Judge; PETERSON, Judge; and LARKIN, Judge.

## OPINION

PETERSON, Judge.

This appeal is from a determination by an unemployment-law judge (ULJ) that relator is ineligible for unemployment benefits because he was discharged for employment misconduct. We affirm.

## FACTS

Relator Blayne Brisson worked as a full-time utility-maintenance supervisor for respondent City of Hewitt from June 1, 2002, through October 7, 2009. In June 2009, the city clerk questioned relator about stainless-steel bolts that he had purchased to use on speed-limit signs. After talking to relator, the clerk checked into the issue further and learned that less-expensive bolts could be used for the signs. The clerk instructed relator to return the bolts, but he did not do so. A city-council member returned the bolts, except for one box that was a special-order item, to the local hardware store. When relator came to work the next day and the clerk told him about the bolts being returned, relator picked up the remaining box of bolts and threw it against the wall, which caused the box to open and the bolts to spill out, and frightened the clerk.

In August 2009, the city clerk was told that she would be moved to a new building to separate her from relator. The clerk felt that relator had created a hostile work environment. Relator was instructed to not go to the new building. He went there several times when he knew that the clerk was not there. He also went there once when he knew that the clerk was there, but he did so upon a direct order from the mayor.

After a city resident reported seeing relator viewing pornography on relator's computer at work, the city conducted an investigation. The resident reported to an investigator that there was "no doubt" regarding the content of what relator had been viewing. The resident also stated, "That made me mad. He was doing that on city time that we are paying for, and there was work yet to be done that he hadn't completed."

An investigation of relator's work computer by Mike Stromberg of Stromberg Technologies revealed more than 150 pornographic images on the computer. Stromberg opined that, due to the nature and number of images, it was highly unlikely that the images had been accessed accidentally. Relator admitted using his work computer to open pornographic e-mail attachments and access pornographic websites.

Relator was discharged for displaying hostility when he threw the box of bolts, insubordination for going to the new building after being told not to, and viewing pornography. Relator filed a claim for unemployment benefits with respondent Department of Employment and Economic Development (DEED). A DEED adjudicator determined that relator was ineligible for unemployment benefits during a week when he had been on paid administrative leave but did not determine wheth-

er relator was eligible for benefits following his discharge.

Relator appealed to a ULJ. The parties agreed to have the ULJ determine relator's eligibility following discharge without an initial determination by the department. Following an evidentiary hearing, by findings of fact and decision issued on December 21, 2009, the ULJ determined that relator's use of city resources to view pornography was employment misconduct, that relator was discharged for the misconduct and, therefore, that relator is ineligible for unemployment benefits.

The ULJ determined:

The evidence shows that [the mayor] specifically asked [relator] to go to the building to deal with the plumber. [Relator] was following a direct order and was not therefore insubordinate. The evidence shows that [relator] was upset and threw a box of bolts. Even if [relator] was upset that no one sought his opinion regarding the bolts, [relator] should have controlled his anger and not thrown the bolts. Even so, that expression happened once, and [relator] did not intend to intimidate or harm a person. [Relator] also admitted in testimony that he viewed pornographic images on his work computer, and also visited pornographic sites. [Relator] argued that such viewing was not excessive, and that there was no express policy prohibiting the practice. An employer, particularly a government entity, has a right to reasonably expect that employees will not use city resources to view pornography.

Relator filed a request for reconsideration. On January 20, 2010, the ULJ issued an order affirming the December 21, 2009 decision. On January 22, 2010, the ULJ issued an order labeled "Amended Findings of Fact and Decision." The amended decision states that there was an error in the January 20 order but does not identify the error, and the error is not apparent. Both the January 20 order and the January 22 amended decision state that the December 21, 2009, order is factually and legally correct, and both contain identical language in their respective memorandum sections. This certiorari appeal followed.

## ISSUE

Did relator commit employment misconduct when he used a city computer to open pornographic e-mail attachments and access pornographic websites?

## ANALYSIS

■ Whether an employee committed employment misconduct is a mixed question of fact and law. *Schmidgall v. Film-Tec Corp.*, 644 N.W.2d 801, 804 (Minn. 2002). "Whether the employee committed a particular act is a question of fact." *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn.App.2006). We view the ULJ's findings of fact in the light most favorable to the decision and give deference to the ULJ's credibility determinations, and we will not disturb factual findings if they are supported by substantial evidence. *Id.* But whether an employee's act constitutes employment misconduct is a question of law, which we review de novo. *Schmidgall*, 644 N.W.2d at 804.

An employee who was discharged for employment misconduct is ineligible for unemployment benefits. Minn.Stat. § 268.095, subd. 4(1) (2008). The unemployment-insurance statute provides:

(a) Employment misconduct means any intentional, negligent, or indifferent conduct, on the job or off the job that displays clearly:

(1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or

(2) a substantial lack of concern for the employment.

(b) Regardless of paragraph (a), the following is not employment misconduct:
. . .

(2) inefficiency or inadvertence;

(3) simple unsatisfactory conduct;

(4) conduct an average reasonable employee would have engaged in under the circumstances;

(5) poor performance because of inability or incapacity; [or]
. . . .

(6) good faith errors in judgment if judgment was required[.]

(d) If the conduct for which the applicant was discharged involved only a single incident, that is an important fact that must be considered in deciding whether the conduct rises to the level of employment misconduct under paragraph (a).

(e) The definition of employment misconduct provided by this subdivision is exclusive and no other definition applies.

Minn.Stat. § 268.095, subd. 6 (Supp.2009).

Relator argues that he did not commit employment misconduct because the city's employee manual did not prohibit viewing pornography on city computers. We have not found any controlling authority that addresses whether an employee's use of an employer's computer to view pornography is employment misconduct when the conduct is not prohibited by an employer's policy. But using his employer's computer to view pornographic images and visit pornographic websites was not related to any of relator's job duties, and an employer has a right to reasonably expect that an employee will not engage in this type of behavior while at work even though the employer has not enacted a policy that prohibits the behavior. Furthermore, the number of images and the fact that the images were obtained by both opening e-mail attachments and accessing websites demonstrates that the images were not accessed inadvertently or because of relator's inability to operate the computer. Relator's conduct was not conduct that an average reasonable employee would have engaged in under the circumstances and was, instead, a serious violation of the standards of behavior that the employer had a right to reasonably expect of relator.

Relator also argues that he did not commit employment misconduct because viewing pornography is not a crime. But the statutory definition of employment misconduct does not require that, to constitute employment misconduct, an employee's conduct must be a criminal act.

Finally, relator argues that his misconduct was not an issue until he obtained a restraining order against a member of the city council. But, as relator acknowledges, this issue was not presented to the ULJ, and the restraining order is not part of the record on appeal. Consequently, we will not consider this issue. *McNeilly v. Dep't of Emp't & Econ. Dev.*, 778 N.W.2d 707, 709 n. 1 (Minn.App.2010).

## DECISION

Relator's use of his employer's computer to open pornographic e-mail attachments and access pornographic websites seriously violated a standard of behavior that the employer had a right to reasonably expect of relator, even though the employer had not adopted a policy that prohibited relator's conduct. Therefore, relator committed employment misconduct, and he is ineligible for unemployment benefits.

**Affirmed.**