*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A13-2222**

Pamela L. Ott,
Relator,

vs.

Timberland Partners Management Co. (Corp),
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed August 25, 2014**
**Affirmed**
**Larkin, Judge**

Department of Employment and Economic Development
File No. 31492531-3

Pamela L. Ott, Apple Valley, Minnesota (pro se relator)

Malcolm P. Terry, Sarah Lynn Krans, Bernick Lifson P.A., Minneapolis, Minnesota (for respondent employer)

Lee B. Nelson, Minnesota Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)


Considered and decided by Larkin, Presiding Judge; Bjorkman, Judge; and Smith, Judge.

UNPUBLISHED OPINION

**LARKIN**, Judge

Relator challenges an unemployment-law judge's decision that she is ineligible for unemployment benefits because she was discharged for employment misconduct. We affirm.

## FACTS

Relator Pamela L. Ott began working for respondent Timberland Partners Management Co. as a community manager in 2012. Ott was discharged on August 1, 2013. Ott established an unemployment-benefits account with respondent Department of Employment and Economic Development (DEED), and DEED issued a determination of eligibility. Timberland appealed the determination, and an unemployment-law judge (ULJ) held a telephonic hearing. The ULJ concluded that Ott was discharged for employment misconduct and is therefore ineligible for unemployment benefits. Ott requested reconsideration, and the ULJ affirmed the decision. This certiorari appeal follows.

## DECISION

This court may reverse or modify a ULJ's decision "if the substantial rights of the petitioner may have been prejudiced because the findings, inferences, conclusion, or decision" are "unsupported by substantial evidence in view of the entire record as submitted" or "affected by other error of law." Minn. Stat. § 268.105, subd. 7(d) (2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Minneapolis Van & Warehouse Co. v. St. Paul*

*Terminal Warehouse Co.*, 288 Minn. 294, 299, 180 N.W.2d 175, 178 (1970) (quotation omitted).

An employee who is discharged for employment misconduct is ineligible to receive unemployment benefits. Minn. Stat. § 268.095, subd. 4(1) (2012). Employment misconduct means "any intentional, negligent, or indifferent conduct, on the job or off the job that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." *Id.*, subd. 6(a) (2012). "As a general rule, refusing to abide by an employer's reasonable policies and requests amounts to disqualifying misconduct." *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn. 2002).

Whether an employee committed employment misconduct "is a mixed question of fact and law." *Id.* Whether a particular act constitutes employment misconduct is a question of law, which we review de novo. *Scheunemann v. Radisson S. Hotel*, 562 N.W.2d 32, 34 (Minn. App. 1997). Whether the employee committed the particular act, however, is a question of fact. *Id.* We review the ULJ's factual findings "in the light most favorable to the decision" and defer to the ULJ's credibility determinations. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006).

The ULJ found that Ott was discharged for three reasons. First, Ott failed to meet Timberland's expectations regarding her supervision of J.S., a maintenance supervisor. Second, Ott was unreasonably behind on her invoicing duties. Third, Ott submitted a false report regarding the status of vacant apartments. Because the third finding is dispositive, we address it first.

3

At the hearing before the ULJ, Ott's supervisor testified that Ott's responsibilities as a community manager included preparation and submission of a report indicating whether recently vacated apartments were "rent ready." Ott's supervisor explicitly instructed her to personally inspect each vacant apartment prior to submitting the report. Ott acknowledged that she submitted her July 2013 report without personally inspecting the apartments and, as a result, inaccurately reported that several apartments were rent ready. Ott's failure to personally inspect the apartments before submitting her report, as Timberland reasonably requested, is employment misconduct. *See Schmidgall*, 644 N.W.2d at 804.

Ott argues that "[i]t is not employment misconduct if the performance problem was a single incident which did not have a significant negative effect on the employer." Under Minnesota Statutes, "[i]f the conduct for which the applicant was discharged involved only a single incident, that is an important fact that must be considered in deciding whether the conduct rises to the level of employment misconduct." Minn. Stat. § 268.095, subd. 6(d) (2012).

We conclude that Ott's failure to comply with Timberland's reasonable request that she personally inspect vacant apartments before including them in her report rises to the level of single-incident employment misconduct. By submitting the report, Ott implied that she had personally inspected the apartments as she had been instructed to do. That was a false representation, and it resulted in an inaccurate report. Because the report was an act of dishonesty that prevents Timberland from entrusting Ott with her job duties, it rises to the level of employment misconduct. *See Skarhus*, 721 N.W.2d at 344

4

(concluding that a cashier's theft "had a significant adverse impact on the employer" and thus "did not fall under the [then-existing] single-incident exception to employment misconduct set forth in Minn. Stat. § 268.095, subd. 6 (2004)," because "Davanni's could no longer entrust [the cashier] with . . . the essential functions of the job").

Ott argues that she assumed the apartments were rent ready because she "had provided J.S. [(the maintenance supervisor)] detailed work orders for each item in need of maintenance in each apartment." But Ott testified at the hearing that J.S. was not performing up to her expectations and that she had been instructed to document J.S.'s failures. In addition, Ott testified that the day before her report was due, she went to the rental property looking for J.S. and was informed that no one had seen him. Nonetheless, Ott submitted a report stating that the apartments were rent ready without personally inspecting them. Given Ott's testimony regarding J.S.'s inadequate performance and her knowledge that he had not been at the property the day before her report was due, Ott cannot justify her failure to personally inspect the apartments by relying on what appears to have been an unreasonable assumption that J.S. would complete the work orders.

Ott also argues that she relied on "[t]he precedent . . . that changes could be made on the [report]" after submission. This argument is unpersuasive. Ott testified that she intended to personally inspect the apartments before submitting her report and that she "made a mistake by doing the report first." In addition, Ott heavily focuses on her positive July 2, 2013 annual performance review. Because Ott's review is not part of the record, we cannot consider it. *See Appelhof v. Comm'r of Jobs & Training*, 450 N.W.2d 589, 591 (Minn. App. 1990) (stating that on certiorari review of an unemployment-

5

benefits hearing, "evidence which was not received below may not be reviewed as part of the record on appeal"). Even if the performance review were considered, it would not negate Ott's intentional submission of a false report, which "undermined" Timberland's "ability to assign [her] the essential functions of the job." *See Skarhus*, 721 N.W.2d at 344.

Lastly, Ott argues that the ULJ's findings of fact are inaccurate regarding her employment start date, the contents of an "action plan," and the date on which Ott's supervisor learned of her invoice backlog. But to prevail on certiorari review, Ott must show that her substantial rights were prejudiced. *See* Minn. Stat. § 268.105, subd. 7(d). The challenged findings are not relevant or necessary to the ULJ's supported finding that Ott submitted a false report to her employer. Therefore, even if the challenged findings are inaccurate, they do not prejudice Ott or provide a basis for reversal.

Because the false report constitutes employment misconduct, it is unnecessary to determine whether Ott's failure to meet Timberland's expectations regarding supervision of J.S. and compliance with invoicing procedures is also employment misconduct. We nonetheless note that it is difficult to reconcile Timberland's testimony that members of Ott's staff were not "meeting . . . the company's expectations" and that invoicing can be a "daunting task," and the ULJ's findings that Ott generally worked hard and that there were staffing shortages, with a misconduct determination. *See* Minn. Stat. § 268.095 subd. 6(b)(2), (3), (5) (2012) (stating that the following is not misconduct: "conduct that was a consequence of the applicant's inefficiency or inadvertence," "simple

unsatisfactory conduct," or "conduct that was a consequence of the applicant's inability or incapacity").

In sum, Ott's intentional submission of a false report in violation of her employer's reasonable request that she personally inspect apartments before submitting an apartment readiness report is employment misconduct. The ULJ therefore did not err in determining that Ott is ineligible for unemployment benefits.

**Affirmed.**

7