*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1787**

Chandler Billings,
Respondent,

vs.

65th Street Property Management, LLC,
Relator,

Department of Employment and
Economic Development,
Respondent.

**Filed June 8, 2015
Affirmed
Johnson, Judge**

Department of Employment and
Economic Development
File No. 32596248-3

Chandler Billings, Stewartville, Minnesota (pro se respondent)

James A. Godwin, Rick A. Dold, Ryan E. Rousseau, Godwin Law Office, Rochester, Minnesota (for relator)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

        Considered and decided by Peterson, Presiding Judge; Johnson, Judge; and Minge,

Judge.*

---

        *Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**JOHNSON**, Judge

A man was fired from his job because he cleaned and put away his tools at the end of his workday, rather than leaving the workplace immediately after his work was completed without cleaning and putting away the tools. An unemployment-law judge concluded that he did not engage in employment misconduct. We affirm.

## FACTS

Chandler Billings worked for 65th Street Property Management, LLC, from March 1, 2012, to May 19, 2014. His duties involved maintenance and groundskeeping as well as dog-walking and other personal services for Courtnay Montgomery, the manager of the property, who lives on site.

On May 13, 2014, Billings was mowing a lawn. Montgomery was dissatisfied with his work. She sent him a text message saying that he could leave when he finished mowing. When Billings finished mowing the lawn, he "sprayed everything off with the hose, made everything clean the way [Montgomery] likes it, put everything away and left." Six days later, 65th Street terminated Billings's employment, in part because he did not leave work immediately after he finished mowing on May 13. At the time of the termination, 65th Street provided two other reasons for terminating Billings. But in its appellate brief, 65th Street relies only on the reason that Billings did not leave work immediately after he finished mowing on May 13.

Billings applied for unemployment benefits. The department of employment and economic development made an initial determination that he is ineligible for benefits on

the ground that he was discharged for employment misconduct. Billings filed an administrative appeal. A ULJ conducted an evidentiary hearing, at which Billings and Montgomery testified. The ULJ concluded that Billings's conduct was not employment misconduct, as defined by the unemployment statutes. *See* Minn. Stat. § 268.095, subd. 6(a) (2014). Thus, the ULJ determined that Billings is not ineligible for unemployment benefits. After 65th Street requested reconsideration, the ULJ affirmed her earlier determination. 65th Street appeals to this court by way of a writ of certiorari.

## D E C I S I O N

65th Street argues that the ULJ erred by concluding that Billings did not engage in employment misconduct and that he is not ineligible for unemployment benefits. This court reviews a ULJ's decision granting unemployment benefits to determine whether the findings, inferences, conclusions of law, or decision are affected by an error of law or are unsupported by substantial evidence in view of the entire record. Minn. Stat. § 268.105, subd. 7(d) (2014). The ULJ's factual findings are viewed in the light most favorable to the decision being reviewed. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006). The ultimate determination whether an employee is ineligible for unemployment benefits is a question of law, which is subject to a *de novo* standard of review. *See id.*

"An applicant who was discharged from employment by an employer is ineligible for all unemployment benefits . . . if . . . the applicant was discharged because of employment misconduct as defined in subdivision 6." Minn. Stat. § 268.095, subd. 4(1) (2014). "Employment misconduct" is defined as "any intentional, negligent, or

3

indifferent conduct, on the job or off the job that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." *Id.*, subd. 6(a) (2014). "As a general rule, refusing to abide by an employer's reasonable policies and requests amounts to disqualifying misconduct." *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn. 2002).

In this case, the ULJ made the following findings about the events of May 13, 2014: "Billings mowed Montgomery's lawn. Montgomery was unhappy with his work and told him to leave when he was finished mowing. Billings cleaned and put away the mowing equipment before leaving. Montgomery was upset that Billings did not leave immediately after mowing." The ULJ ultimately determined that the "preponderance of the evidence shows that [Billings's] conduct was not employment misconduct." The ULJ's ultimate determination was based on the following reasoning: "It is not unreasonable for an employee to clean and put away tools used to finish a job. An average reasonable employee would put away his tools if his employer told him to stop doing a job with those tools, rather than immediately set them down and walk away."

The ULJ's findings and reasoning comport with the evidentiary record and with common sense. Billings testified that he received a text message from Montgomery saying only that he could leave when he finished mowing the lawn. Billings also testified that he "sprayed everything off with the hose, made everything clean the way [Montgomery] likes it, put everything away and left." Billings testified further that he was concerned that he would be terminated if he did *not* clean and put away his tools

4

after he finished mowing. Billings's testimony gives the impression that it was customary for him to clean and put away his tools whenever he finished mowing and that Montgomery generally wanted him to do so. The ULJ was entitled to make such inferences, which would support the ULJ's decision. Thus, Billings's testimony provides ample support for the ULJ's factual findings and the ultimate determination that he did not engage in employment misconduct.

65th Street contends that Billings engaged in insubordination by remaining on the employer's premises after being told to leave. In general, an employee engages in misconduct by not abiding by an employer's reasonable request. *Schmidgall*, 644 N.W.2d at 804. But the record of the hearing before the ULJ does not contain any evidence that Montgomery told Billings that he must leave the premises the very instant he finished mowing, without taking any other action. The most extensive and clear evidence about Montgomery's communication to Billings is Billings's own testimony, which is as follows:

> [Montgomery] sent me a text saying that when I was done mowing, when I was done mowing I could leave . . . . I said fine. I picked up, I cleaned up everything I had out because I knew if I left things just left, I just up and left I would be fired for that. So I made sure I put everything away that I had out, sprayed everything off with the hose, made everything clean the way [Montgomery] likes it, put everything away and left.

There was no documentary evidence of the text message that Montgomery sent to Billings that afternoon. Montgomery's testimony about the issue is very general and brief and does not contradict Billings's version of the events. In light of all the evidence, the ULJ did not err by finding that Billings did not disobey an instruction to leave work

5

immediately after completing the mowing, before cleaning and putting away the lawn mower and other tools, because, as far as the evidence shows, there was no such instruction.

65th Street also contends that Billings's conduct should be deemed misconduct because the company "was required to pay [Billings] for additional wages" for the time he spent cleaning and putting away the tools and that he "unilaterally increased his pay despite his supervisor instructing him to leave the premises." This contention, which focuses on the impact on the employer, does not overcome the ULJ's finding that Billings did not disregard an employer's instruction, for the reasons already discussed. In any event, there is no evidence in the record that Billings's conduct actually increased the employer's wage expenses. That is so because there is no evidence in the record as to how much time Billings spent cleaning and putting away the tools and no evidence as to whether he actually was paid for that time. Thus, even if it were relevant, 65th Street did not introduce evidence of increased wage expenses.

In sum, the ULJ did not err by finding that Billings did not engage in employment misconduct.

**Affirmed.**