*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0556**

Vernon E. Wallace,
Relator,

vs.

Metro Center for Independent Living, Inc.,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed January 19, 2016
Affirmed
Chutich, Judge**

Department of Employment and Economic Development
File No. 31888554-7

Vernon E. Wallace, Forest Lake, Minnesota (pro se relator)

Metro Center for Independent Living, Inc., St. Louis, Missouri (respondent)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Hooten, Presiding Judge; Ross, Judge; and Chutich, Judge.

UNPUBLISHED OPINION

**CHUTICH**, Judge

Relator Vernon Wallace, appealing on his own behalf, challenges a decision by an unemployment-law judge that he was discharged for employment misconduct and is therefore ineligible for unemployment benefits. Because we will not disturb the unemployment-law judge's credibility determinations and because the decision is supported by substantial evidence, we affirm.

## FACTS

Vernon Wallace began employment with Metro Center for Independent Living in December 2012. In his role, Wallace regularly interacted with veteran mentors who volunteered in a mentoring program, veteran mentees who were also defendants in veterans court, veterans court staff including probation officers, and other center staff members. During eleven months of employment with the center, Wallace received several warnings and corrective actions related to inappropriate language and conduct and disregarding direction from his supervisors. Wallace was discharged from employment with the center in November 2013.

Wallace applied for unemployment benefits and was initially determined ineligible because he was discharged for employment misconduct. He filed an administrative appeal to the Minnesota Department of Employment and Economic Development. An initial telephonic hearing was held before an unemployment-law judge. In January 2014, the unemployment-law judge issued a written decision of ineligibility determining that

Wallace had committed employment misconduct. Wallace filed a request for reconsideration, and the unemployment-law judge affirmed the initial determination.

In April 2014, Wallace petitioned for certiorari review to this court for the first time. The department filed a letter conceding that the unemployment-law judge's findings were unsupported by substantial evidence and that he abused his discretion in failing to order an additional hearing based on Wallace's request for reconsideration. In October 2014, this court issued a special-term order reversing and remanding to the department.

The department held a second telephonic hearing before a different unemployment-law judge in December 2014. At the outset of the second hearing, the unemployment-law judge stated that he would be considering new evidence in addition to the record from the first hearing. Over the course of the two hearings, testimony was taken from Wallace, his supervisor at the time of discharge, his first supervisor at the center, the center's executive director at the time of discharge, a management-level employee of the center, two probation officers, and a veterans court employee. Wallace was not represented by a lawyer at either hearing; a hearing representative participated on behalf of the center at both.

Significant material discrepancies in testimony emerged at the second hearing. Ultimately, Wallace accused his supervisor and a probation officer of lying and collaborating to fabricate stories and evidence against him. When the unemployment-law judge pressed Wallace for some explanation as to why Wallace believed his supervisor would go to such lengths to assemble an elaborate hoax against him, Wallace replied: "Oh boy, this is a sensitive thing….[The supervisor] is a self-professed lesbian….[which is] relevant because I think she hates men." The unemployment-law judge asked whether

3

Wallace could "demonstrate. . .that [the supervisor] had a particular animus against men in general or that she had a particular animus against [Wallace] personally," but admonished Wallace that if his only argument was that she is a lesbian, then "it's utterly irrelevant and I couldn't care less." Wallace replied that he had no dispositive evidence, but that he felt generally "uncomfortable" knowing that his supervisor was a lesbian and that he "didn't want to be around her or the workplace because it felt like she was a bigger man than I was and she acted the part."

The second unemployment-law judge issued a written decision of ineligibility in January 2015. The decision included detailed findings and analysis to support the judge's determination that Wallace committed employment misconduct.

The unemployment-law judge found that Wallace had various inappropriate interactions at work, particularly with women colleagues. For example, he repeatedly called a center staff member "beautiful" and looked at her chest. Wallace frequently addressed a probation officer by unprofessional pet names and once referred to his supervisor as "the b-tch." In addition, during a meeting about boundaries between professional roles, Wallace made an inappropriate sexual remark.

The unemployment-law judge further found that Wallace disregarded explicit instructions from his supervisor, including instructions to stop expanding the veterans mentor program to additional counties, to stop promoting a "mentor-on-call" initiative, and to stop attending mentor-mentee meetings. When asked for an explanation about why he ignored these instructions, Wallace replied that his supervisor could not understand what his role needed because she was not a veteran.

4

The unemployment-law judge also found that Wallace acted inappropriately in court-related contacts. He once advised a veteran-mentee not to tell his probation officer that he had consumed alcohol in violation of his probation terms, and Wallace inaccurately informed a court employee that Wallace was no longer allowed to have any contact with veteran-defendants.

In the written decision finding employment misconduct, the unemployment-law judge acknowledged that key facts were "highly disputed" among Wallace and the various witnesses. Indeed, Wallace denied most of the above incidents in whole or in part. But the unemployment-law judge explicitly found that "[a]s a whole, the record shows that Wallace's testimony was not credible."

Wallace filed a second request for reconsideration, after which a second order of affirmation issued. Wallace again petitioned for certiorari review to this court, resulting in this appeal.

**D E C I S I O N**

The purpose of the Minnesota Unemployment Insurance Program is to provide "temporary partial wage replacement" to assist those who become unemployed through no fault of their own. Minn. Stat. § 268.03, subd. 1 (2014). This court may affirm the decision of an unemployment-law judge or remand the case for further proceedings; it may also reverse or modify the decision if the substantial rights of the relator have been prejudiced because the findings, inferences, conclusion, or decision is affected by an error of law or unsupported by substantial evidence in view of the record as a whole. Minn. Stat. § 268.105, subd. 7(d) (Supp. 2015).

Chapter 268, which governs Minnesota unemployment insurance, "is remedial in nature and must be applied in favor of awarding unemployment benefits." Minn. Stat. § 268.031, subd. 2 (2014). An employee discharged for employment misconduct, however, is ineligible for unemployment benefits. Minn. Stat. § 268.095, subd. 4(1) (2014). "Employment misconduct" is defined as "any intentional, negligent, or indifferent conduct . . . that displays clearly . . . a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee." *Id.*, subd. 6(a)(1) (2014). "As a general rule, refusing to abide by an employer's reasonable policies and requests amounts to disqualifying misconduct." *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn. 2002).

Employment misconduct presents a mixed question of fact and law: whether an employee committed a particular act is a question of fact, and whether that act is employment misconduct is a question of law. *Skarhus v. Davanni's Inc.,* 721 N.W.2d 340, 344 (Minn. App. 2006). An unemployment-law judge's factual findings are viewed in a light most favorable to the decision, and they will not be disturbed if the evidence substantially sustains them. *Id.* Finally, and key to this appeal: credibility determinations are the exclusive province of the unemployment-law judge. *Id.* at 345.

The allegations against Wallace, if credited, amount to employment misconduct. Wallace's appeal arises from his continuing theory that his supervisor choreographed an elaborate lie to satisfy a personal vendetta against him. Wallace acknowledges that the decision of the unemployment-law judge "came down to the credibility of the parties and who was telling the truth." Here, the unemployment-law judge specifically found that

6

Wallace's testimony "as a whole" was not credible. The judge's decision analyzed the demeanor of various witnesses and the logical coherence of their testimony, and credited the testimony of the center employees over that of Wallace. We defer to this credibility finding. In addition, we conclude that the legal determination that Wallace committed employment misconduct is well supported by substantial evidence.

**Affirmed.**