**Gerald W. GILKESON, Relator,**

v.

**INDUSTRIAL PARTS AND SERVICE, INC., Department of Economic Security, Respondents.**

**No. CX–85–2017.**

Court of Appeals of Minnesota.

March 18, 1986.

**449**

Hubert H. Humphrey, III, Atty. Gen., Laura E. Mattson, Sp. Asst. Atty. Gen., St. Paul, for Dept. of Economic Sec.

Heard, considered and decided by NIER-ENGARTEN, P.J. and FORSBERG and LESLIE, JJ.

## OPINION

LESLIE, Judge.

Relator Gerald Gilkeson has requested review of a determination by the Commissioner's representative that he was terminated for misconduct. He also contests rulings by the Department referee concerning the admissibility of certain evidence. We affirm.

## FACTS

Gerald Gilkeson was hired as a service technician by Industrial Parts and Service, Inc. ("employer") in October 1984. His compensation was based upon the number of working hours which were billable to customers. Approximately one and one-half months later, at his request, Gilkeson was promoted to the position of service manager/dispatcher. The employer continued to pay him based upon billable customer hours.

The employer's normal working hours were from 7:00 a.m. until 5:00 p.m. After he was promoted, Gilkeson was requested to report for work between 6:45 and 7:00 a.m. so that he could assign work to the field service technicians. Despite this request, and other frequent warnings, Gilkeson was often tardy for work. As a result, other employees did not receive their work assignments promptly.

All company employees were required to attend Tuesday morning business meetings from 7:00 to 7:30 a.m. Although Gilkeson was warned on numerous occasions that he should not be late for those meetings, Gilkeson continued to arrive late.

Employees were required to carry a paging device so that the employer could contact them and assign them work. On several occasions Gilkeson was instructed to

S. Warren Gale, Minneapolis, for Gerald W. Gilkeson.

Cass W. Weil, St. Paul, for Industrial Parts and Service, Inc.

wear his paging device, and when he failed to do so, he was unavailable for work assignments. He informed at least one other employee that he would not wear his pager. On one occasion in March 1985, Gilkeson was informed that if he did not start wearing his pager he would be "down the road."

Gilkeson had to be warned at one time not to address the general manager in a profane manner. He was also warned not to attend to his personal business during working hours. Although he ceased addressing the general manager in his previous manner, he continued to leave work to attend to personal business.

Gilkeson sometimes argued with the president and general manager or would not listen to directions or instructions. On several occasions when he was asked to keep the shop clean, he responded that it was clean enough for him.

The employer was dissatisfied with Gilkeson's attendance and job performance. At least one customer had complained that he had overbid a job and one customer was lost due to Gilkeson's actions. On March 5, 1985, Gilkeson was demoted to service technician and was told to call in each day between 7:00 and 7:30 a.m. to receive his job assignments.

Between March 5 and March 8, Gilkeson contacted the employer's dispatcher as instructed. On each of those days he received approximately 7 to 10 hours of work. On March 8 the president was upset because of Gilkeson's failure to provide adequate service and because a customer had been lost due to Gilkeson's overbidding. As a result, Gilkeson was informed that he was on "on-call" status, which meant that he should not report to work in person but should call in between 7:00 and 7:30 a.m. to receive his assignments.

On March 12, Gilkeson attended the mandatory Tuesday morning meeting. Thereafter, he was dispatched to a job assignment, but left before completing his work, indicating that he was ill but would go to any other job assignment. He was assigned to another job, and worked a total of approximately two and one-half hours that day.

On March 13, Gilkeson failed to call the employer between 7:00 and 7:30 a.m. The employer's service coordinator contacted him at approximately 8:30 and assigned him one and one-half hours of work. That day, Gilkeson filed a claim for unemployment compensation benefits, effective March 10.

On March 14 and 15, Gilkeson again failed to call his employer between 7:00 and 7:30 a.m. The service coordinator called him on both days after 7:30 a.m. and assigned him approximately one and one-half hours of work per day.

On March 18, Gilkeson left his residence without his paging device and did not contact his employer until approximately 11:30 a.m. He was informed that no work was available at that time, but that he would be contacted if he was needed.

On March 19, Gilkeson failed to attend the Tuesday morning meeting and also failed to call in between 7:00 and 7:30 a.m. The service coordinator called him later and assigned him approximately six hours of work.

Gilkeson was discharged on March 19 for his poor attendance, his failure to call in between 7:00 and 7:30 a.m. as instructed, and his failure to attend the mandatory Tuesday morning meeting on March 19.

A claims deputy for the Department of Economic Security determined that Gilkeson was discharged for misconduct and was not entitled to receive unemployment compensation benefits. Gilkeson appealed, and a Department referee affirmed the claims deputy's decision. The referee's decision was affirmed by a Commissioner's representative.

## ISSUES

1. Was Gilkeson discharged for misconduct and therefore disqualified from receiving unemployment compensation benefits?

2. Was Gilkeson deprived of a fair hearing as a result of rulings by the referee

regarding the admissibility of certain evidence?

## ANALYSIS

1. Gilkeson must be disqualified from receiving unemployment compensation benefits if he was discharged as a result of his own misconduct. *See* Minn. Stat. § 268.09, subd. 1(2) (1984). "Misconduct" has been defined as follows:

" * * * [T]he intended meaning of the term 'misconduct' * * * is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed 'misconduct' * * *."

*Tilseth v. Midwest Lumber Co.,* 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (1973) (quoting *Boynton Cab Co. v. Neubeck,* 237 Wis. 249, 259, 296 N.W. 636, 640 (1941)). The burden was on the employer here to prove by a preponderance of the evidence that Gilkeson was discharged for misconduct. *Lumpkin v. North Central Airlines, Inc.,* 296 Minn. 456, 459, 209 N.W.2d 397, 400 (1973). The findings of the Commissioner's representative will not be disturbed by this court if there is evidence in the record which reasonably tends to sustain them. *White v. Metropolitan Medical Center,* 332 N.W.2d 25, 26 (Minn.1983).

In light of this narrow standard of review, the findings of the Commissioner's representative in this instance must be affirmed. As the representative found, Gilkeson consistently disregarded his employer's directions. Prior to being placed "on-call," Gilkeson repeatedly failed to report to work or the weekly meetings on time, failed to carry his pager, talked back to the president and general manager, refused to clean the shop, and left work during business hours to attend to personal business. After he was placed "on-call," he failed to call in as instructed and failed to attend a mandatory meeting.

Gilkeson argues that he should not have been considered tardy for work because that term is "vague and inconsistent" as applied to his situation. He points out that his employer's hours were from 7:00 a.m. to 5:00 p.m., but that some other employees arrived early, and that he was only requested to arrive early to have a cup of coffee and "get the day going."

The president testified that Gilkeson was asked to come in before 7:00 a.m. so that the other employees could receive their work assignments promptly. At the time of the request, Gilkeson held the position of service manager/dispatcher. His employer had the right to expect that Gilkeson would obey this reasonable request. *See Sandstrom v. Douglas Machine Corp.,* 372 N.W.2d 89 (Minn.Ct.App.1985) (employee's failure to obey reasonable request may constitute misconduct).

Gilkeson also claims that he negligently left his paging device behind on his desk only once, but that the assistant manager knew where he was going. However, the Commissioner's representative found that Gilkeson failed to wear his pager on several occasions and that he was warned that if he did not start wearing his pager he would be "down the road." The representative of the Commissioner also found that Gilkeson had told at least one other employee that he would not wear his pager. These findings are supported by the record.

Gilkeson argues that his absences from the shop for personal reasons were for good cause (taking his daughter to school) and that the assistant manager knew where he was going on those occasions. Nonetheless, the record does not indicate that Gilkeson's absences were actually ex-

cused. In addition, Gilkeson continued his behavior even after he had been told by his employer not to take care of personal business during working hours.

After he was placed "on-call," Gilkeson failed to call the employer between 7:00 and 7:30 a.m. as instructed. He alleges that he and the service coordinator had worked out an alternate arrangement, whereby Gilkeson would be notified if there was work available. The Commissioner's representative considered and specifically rejected this claim, finding more credible the testimony by the employer that Gilkeson was told to call in between 7:00 and 7:30 a.m. Because this finding regarding credibility is reasonably supported by the record, we defer to the Commissioner's determination. *Nyberg v. R.N. Cardozo & Brother, Inc.*, 243 Minn. 361, 364, 67 N.W.2d 821, 823 (1954); *Winkler v. Park Refuse Service, Inc.*, 361 N.W.2d 120, 123 (Minn.Ct.App.1985).

Finally, Gilkeson claims that he did not attend the Tuesday meeting on March 19 for several reasons. He claims that "on-call" employees do not regularly attend those meetings. However, this claim is weakened by the fact that Gilkeson did attend the meeting on Tuesday, March 12 even though he was "on-call" at that time. Further, Gilkeson himself testified that it was generally understood that all employees should go to the meetings. Gilkeson then stated that he had been told not to bother attending the meeting, but later indicated that he had never been told whether or not to attend the meeting.

The Commissioner's representative found that Gilkeson was required to attend the Tuesday meeting. Again, this finding is supported by the record.

As the Commissioner's representative concluded, Gilkeson demonstrated a substantial disregard of his employer's interests by his pattern of failing to follow policies and procedures and ignoring directions and requests. In light of the above discussion, the representative of the Commissioner properly determined that Gilkeson's behavior constituted misconduct

disqualifying him from the receipt of unemployment compensation benefits.

2. Gilkeson also argues that the referee erred by limiting evidence concerning his alleged "unique partner-like relationship" with his employer. However, the referee specifically indicated that she would allow such testimony to demonstrate the attitude or bias of the employer. Despite this ruling, Gilkeson failed to pursue the issue. Gilkeson also claims that he was not allowed to present evidence concerning his wages and weekly benefit amount. As the record disclosed, this issue should be the subject of a separate appeal. *See* Minn. Stat. § 268.10, subd. 2(3) (1984).

## DECISION

The Commissioner's representative properly determined that relator was discharged for misconduct. Relator received a fair hearing before the Department referee.

Affirmed.