*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0850**

David K. Beckwith,
Relator,

vs.

Duluth Lawn & Sport, Inc.,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed December 8, 2014
Affirmed
Toussaint, Judge**[*]

Department of Employment and Economic Development
File No. 32137393-3

David Beckwith, Duluth, Minnesota (pro se relator)

Duluth Lawn & Sport, Inc., Duluth, Minnesota (respondent)

Lee B. Nelson, Minnesota Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Connolly, Presiding Judge; Bjorkman, Judge; and

Toussaint, Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**TOUSSAINT**, Judge

Relator challenges the decision by an unemployment law judge (ULJ) that he was discharged for employment misconduct and is ineligible for unemployment benefits. Because substantial evidence supports the ULJ's decision, we affirm.

## DECISION

Relator David Beckwith asserts that he is entitled to unemployment benefits because he was not given warnings by his employer, Duluth Lawn & Sport, that his behavior was inappropriate, other employees who were not terminated exhibited similar inappropriate behavior, and the ULJ made factual errors to support her decision. The Minnesota Department of Employment and Economic Development (DEED) responds, and we agree, that substantial evidence exists in the record to support the ULJ's determination that Beckwith is ineligible for unemployment benefits because he committed multiple acts of employment misconduct.

Whether Beckwith engaged in conduct that disqualifies him from unemployment benefits is a mixed question of fact and law. *See Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn. 2002). Whether a particular act constitutes employment misconduct is a question of law, which this court reviews de novo. *Scheunemann v. Radisson S. Hotel*, 562 N.W.2d 32, 34 (Minn. App. 1997). But whether Beckwith committed the particular act is a question of fact. *Id.* This court reviews the ULJ's factual findings "in the light most favorable to the decision" and defers to the ULJ's

credibility determinations. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006).

An employee who is discharged from employment for misconduct is ineligible to receive unemployment benefits. Minn. Stat. § 268.095, subd. 4(1) (2012). Employment misconduct means "any intentional, negligent, or indifferent conduct, on the job or off the job that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." 2014 Minn. Laws ch. 239, § 5, at 772 (to be codified at Minn. Stat. § 268.095, subd. 6(a) (2014)). As a general rule, an employee's refusal to abide by an employer's reasonable policies and requests amounts to disqualifying misconduct. *Schmidgall*, 644 N.W.2d at 804.

Beckwith's immediate supervisor and the owner of Duluth Lawn & Sport testified at an evidentiary hearing that Beckwith was terminated based on his cumulative conduct of using his cell phone at work after being told to stop, not punching out for lunch after being told to punch out for lunch, throwing a shovel at a customer's snowmobile, leaving work early and missing a day of work without prior approval, and making derogatory remarks in front of a customer. The ULJ found that Beckwith "had multiple violations of policy on cell phone use, punching out for lunch, and being absent or leaving early without permission, and he had incidents of recklessness and a final incident of swearing in front of customers." The ULJ explained that "Beckwith acted with intentional, negligent, or indifferent conduct that displayed clearly a serious violation of the standards of behavior that Duluth Lawn & Sport had a right to reasonably expect of him." With

3

regard to conflicting testimony from Beckwith, his supervisor, and the Duluth Lawn & Sport owner, the ULJ found that the supervisor and owner were "more credible" than Beckwith because they gave a "believable" and "plausible" explanation of the events that "partly corroborate each other."

Beckwith first contends that the ULJ erred by finding him ineligible for benefits because (1) he was only terminated for the last incident involving the derogatory remark in front of a customer, (2) he should have been issued a warning prior to being terminated, and (3) other employees also exhibited similar behavior without being terminated. Minnesota law explains that an employee's conduct may be considered as a whole in determining whether the employee was discharged because of employment misconduct, and the record is clear that Beckwith was not terminated solely for making the derogatory remark in front of a customer. *See Gilkeson v. Indus. Parts & Serv., Inc.*, 383 N.W.2d 448, 450–52 (Minn. App. 1986) (concluding that employee was discharged for employment misconduct because he engaged in a pattern of failing to follow policies and procedures and ignoring directions and requests" when he was repeatedly tardy, failed to carry his pager, spoke to the manager in a profane manner, argued with the president, and refused to obey directives); *Drellack v. Inter-Cnty. Cmty. Council, Inc.*, 366 N.W.2d 671, 674 (Minn. App. 1985). In addition, an employer is not required to give a warning before discharging an employee for employment misconduct, *see Auger v. Gillette Co.*, 303 N.W.2d 255, 257 (Minn. 1981), and similar conduct by co-workers "is not a valid defense to a claim of misconduct." *Dean v. Allied Aviation Fueling Co.*, 381 N.W.2d 80, 83 (Minn. App. 1986). For these reasons, Beckwith's initial arguments fail.

4

Beckwith next asserts that the ULJ made her determination of ineligibility based on incorrect facts because the ULJ erred in her findings on whether he received warnings about his behavior, whether he left work early on December 16, 2013, and whether he showed up to work on January 3, 2014. This court reviews the ULJ's factual findings "in the light most favorable to the decision" and defers to the ULJ's credibility determinations. *Skarhus*, 721 N.W.2d at 344. Beckwith's supervisor testified at the hearing that Beckwith received warnings and reprimands about cell phone use, punching out for lunch, leaving work without permission, and throwing the shovel at a customer's snowmobile. The supervisor also explained that Beckwith also missed work on January 3, 2014, without getting approval to go to a second job. An exhibit the ULJ admitted into evidence shows that Beckwith left work early on another day to go to his second job, and Beckwith's supervisor testified at the hearing that the events described in the exhibit happened on "approximately December 15, 16." Because the record substantially supports the ULJ's factual determinations, we affirm the ULJ's determination that Beckwith is ineligible for unemployment benefits.

**Affirmed.**