*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1381**

Patricia Medal,
Relator,

vs.

Agassiz Federal Credit Union,
Respondent,

Department of Employment and
Economic Development,
Respondent.

**Filed March 9, 2015
Affirmed
Hudson, Judge**

Department of Employment and
Economic Development
File No. 32351030-3

Patricia Medal, Crookston, Minnesota (pro se relator)

Agassiz Federal Credit Union, Crookston, Minnesota (respondent)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent DEED)

Considered and decided by Hudson, Presiding Judge; Bjorkman, Judge; and Reyes, Judge.

UNPUBLISHED OPINION

**HUDSON**, Judge

By certiorari review, relator challenges the decision of an unemployment-law judge that she is ineligible for unemployment benefits because she was discharged for unemployment misconduct. She argues that the employer failed to provide evidence that she frequently made mistakes or failed to perform her duties; that her conduct was at most unsatisfactory or the result of good-faith errors in judgment; and that she was discharged only after the board of directors was advised of the employer's unethical conduct. We affirm.

## FACTS

Relator Patricia Medal was employed as a teller by respondent Agassiz Federal Credit Union from 2008 until March 2014, when she was discharged. Agassiz appealed DEED's initial determination that Medal was eligible for unemployment benefits, arguing that she should be denied benefits because she was discharged for employment misconduct.

At a hearing before an unemployment-law judge (ULJ), Agassiz's CEO testified that Medal was discharged because errors had occurred on the teller line for which Medal had responsibility, and other employees had complained that Medal was not cooperating in working with the tellers and identifying errors. The CEO indicated that, although Medal was supposed to be reviewing transactions, sometimes errors of over $100 went unreported for more than a day. She testified that the errors, which included referencing the wrong amount or the wrong account, became more frequent when Medal took the

head-teller position in 2013, when they occurred almost daily, and that the errors made it more difficult for the bookkeeper to perform her job and cost Agassiz time and money. She testified that Medal also did not place the phone in night mode or personally deliver messages to other employees, as she had been directed. She testified that Medal was discharged because of her failure to cooperate with other employees, the number of errors that occurred under her supervision, and the poor quality of her work. The company bookkeeper also testified that she experienced stress because she had to check for errors herself when Medal was not finding them, and that in one instance, as a result of Medal's error, a customer did not receive interest on a certificate of deposit.

Medal testified that, when she became head teller, she initially made errors, but as she learned the job they became fewer, and she attempted to work more slowly and focus more on her work. She disagreed that she made errors on a daily basis, indicated that she did not make them on purpose, that she always tried to correct them, and that she was only spoken to about errors approximately once per week. She testified that when she had time, she would personally deliver phone messages, but that placing the phone on night mode was hard to remember and "got to be a mental block with all of [the tellers]." She stated that she believed that she had been discharged because when she was on medical leave, she supported other tellers who had accused the CEO of a policy violation of abusing her authority, a claim on which the board took no action. The CEO testified on redirect that the policy-violation allegations did not affect her decision to discharge Medal.

The ULJ issued a decision denying benefits, concluding that Medal had been discharged for employment misconduct. Medal requested reconsideration, and the ULJ modified some findings and affirmed her decision. The ULJ determined that the employer's testimony was more credible than Medal's testimony and that Medal's work performance and failure to follow directives amounted to a serious violation of standards the employer had the right to reasonably expect. This certiorari appeal follows.

## D E C I S I O N

When reviewing an unemployment insurance benefits decision, this court may affirm, remand the case for further proceedings, or reverse and modify the decision if the substantial rights of the relator have been prejudiced because the decision is unsupported by substantial evidence in view of the record as a whole or affected by an error of law. Minn. Stat. § 268.105, subd. 7(d) (2014). Whether an employee engaged in conduct that disqualifies the employee from unemployment benefits presents a mixed question of fact and law. *Stagg v. Vintage Place Inc.*, 796 N.W.2d 312, 315 (Minn. 2011). "Whether the employee committed a particular act is a question of fact." *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006). We review the ULJ's factual findings "in the light most favorable to the decision" and defer to the ULJ's credibility determinations. *Id*. Whether a particular act constitutes employment misconduct is a question of law, which we review de novo. *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn. 2002).

An employee who is discharged because of employment misconduct is ineligible to receive unemployment benefits. Minn. Stat. § 268.095, subd. 4(1) (2014).

4

Employment misconduct is defined as "any intentional, negligent, or indifferent conduct, on the job or off the job that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." *Id.*, subd. 6 (2014). But "conduct an average reasonable employee would have engaged in under the circumstances" and "good faith errors in judgment if judgment was required" do not amount to employment misconduct. *Id.*, subd. 6(b)(4), (6) (2014).

Medal argues that the ULJ erred by concluding that she was discharged for employment misconduct. She disputes the frequency of her errors, alleging that routine business practice includes reviewing transactions and correcting errors, and that any errors she made amounted to simple unsatisfactory conduct, rather than employment misconduct. But refusing to abide by an employer's reasonable policies and requests generally constitutes employment misconduct. *Schmidgall*, 644 N.W.2d at 804. And "[t]he employer has the right to expect scrupulous adherence to procedure by employees handling the employer's money." *McDonald v. PDQ*, 341 N.W.2d 892, 893 (Minn. App. 1984). The ULJ found that Medal made the same ledger mistakes on a regular basis and that her failure to pay close attention to her work resulted in the bookkeeper having to spend significant time to reconcile the ledger, as required by the auditors. These findings are supported by substantial evidence and support the ULJ's determination that Medal's work performance and failure to follow directives amounted to employment misconduct.

The ULJ found that the testimony of the employer's representatives was more credible than Medal's testimony because it was more detailed, consistent, and plausible.

5

Medal argues that this court should not uphold the ULJ's credibility determination because the ULJ was presented only with general assertions, not specific instances of misconduct. We recognize Medal's argument, but we nevertheless conclude that the evidence regarding the extent and frequency of Medal's errors showed a consistent pattern of failing to follow the directions of her employer by not correcting ledger errors. *See Gilkeson v. Indus. Parts & Serv., Inc.*, 383 N.W.2d 448, 452 (Minn. App. 1986) (holding that a "pattern of failing to follow policies and procedures and ignoring directions and requests" of an employer constituted employment misconduct). We acknowledge that the employer's case would have been stronger had it identified specific instances of misconduct. Nevertheless, the record supports the ULJ's credibility determination by showing a pattern of conduct that demonstrated a substantial lack of concern for Medal's employment. *See* Minn. Stat. § 268.095, subd. 6 (stating standard for employment misconduct).

Medal also argues that she was not given any formal warnings about her job performance. But an employer is not always required to give an employee a warning before discharging the employee for employment misconduct. *See Auger v. Gillette Co.*, 303 N.W.2d 255, 257 (Minn. 1981) (stating that a warning was not essential to demonstrate that employees acted in willful disregard of employer's interest). She also argues that the employer did not sustain harm because of her actions. But the bookkeeper testified that one customer was denied interest on a CD as a result of Medal's error. Further, "[h]arm is not necessary for a determination of misconduct." *Sivertson v. Sims Sec., Inc.*, 390 N.W.2d 868, 871 (Minn. App. 1986), *review denied* (Minn. Aug. 20,

6

1986). Therefore, Medal's claim that the employer did not suffer harm from her actions is not dispositive of whether her actions amounted to employment misconduct.

Medal maintains that her conduct in forgetting to switch the phones to night mode and failing to deliver messages to other employees is insufficient to sustain a determination of employment misconduct. The ULJ, however, did not rest her decision only on that conduct, but properly considered it in conjunction with Medal's additional work-related performance. *See Drellack v. Inter–Cnty. Cmty. Council, Inc.*, 366 N.W.2d 671, 674 (Minn. App. 1985) (stating that "[an employee's behavior] may be considered as a whole in determining the propriety of her discharge and her qualification for unemployment compensation benefits").

Medal finally argues that her discharge was in retaliation for her actions supporting a complaint of a policy violation by the CEO. But the ULJ explored this claim at the hearing and found that the record contained insufficient evidence to support it because Medal was not responsible for the complaint and was on medical leave when it was filed. The ULJ's finding on this issue is supported by substantial evidence. In sum, the ULJ did not err by concluding that Medal was discharged because of employment misconduct and denying unemployment benefits.

**Affirmed.**