Tara PETERSON, Relator,

v.

NORTHEAST BANK—MINNEAPOLIS,
Respondent,

Department of Employment and
Economic Development,
Respondent.

No. A11–92.

Court of Appeals of Minnesota.

Oct. 11, 2011.

Tara Peterson, St. Paul, MN, pro se relator.

Pamela M. Harris, Martin & Squires, P.A., St. Paul, MN, for respondent employer.

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, MN, for respondent department.

Considered and decided by WRIGHT, Presiding Judge; HUDSON, Judge; and STAUBER, Judge.

## OPINION

HUDSON, Judge.

Relator challenges the determination of an unemployment-law judge that she is ineligible for unemployment-insurance benefits. Because relator received a settlement payment for back pay that must be deducted from the benefits she had already received, we affirm.

## FACTS

In August 1998, relator Tara Peterson began working as a full-time customer service representative at Northeast Bank (Northeast). In June 2006, after being diagnosed with an aggressive form of leukemia, Peterson took an unpaid leave to undergo a double stem cell transplant. In February 2007, after returning to work, Peterson was allegedly mistreated by Northeast management because she continued to suffer from cancer-related complications and required various accommodations. On August 4, 2009, Peterson was terminated. Northeast stated that Peterson was terminated due to excessive tardiness, but Peterson maintained that this reason was a pretext for terminating her because of her disability.

In November 2009, Peterson filed a lawsuit against Northeast alleging disability discrimination under the Minnesota Human Rights Act (MHRA). Peterson asserted that, as a result of the bank's ad-

verse treatment and wrongful discharge, she suffered damages, including but not limited to lost wages, lost benefits, emotional distress, and humiliation. In January 2010, Peterson and Northeast entered into a settlement agreement pursuant to which Northeast agreed to make three payments totaling $50,000: (1) a payment to Peterson in the amount of $18,423 for unspecified damages that was subject to withholding of taxes and issuance of an IRS form W–2; (2) a payment to Peterson in the amount of $18,423 for emotional injury damages that was subject to issuance of an IRS form 1099–MISC; and (3) a payment to Peterson's attorney of $13,154 for attorney fees that would have been recoverable under the MHRA.

In the meantime, Peterson established an unemployment-benefit account and began receiving unemployment-insurance benefits. But in September 2010, the Minnesota Department of Employment and Economic Development (DEED) issued a determination of ineligibility for the period from January 24, 2010 to July 24, 2010. The notice stated that Peterson had received $18,423 from her employer that was deductible from her unemployment benefits and that Peterson was required to repay an overpayment of $9,438.

Peterson appealed the determination of ineligibility. After an evidentiary hearing, an unemployment-law judge (ULJ) found that $18,423 of Peterson's settlement for unspecified damages met the definition of wages, constituted severance pay or other payment, and was properly deducted from her unemployment benefits. Peterson filed a request for reconsideration, which the ULJ denied. Peterson appeals the ULJ's decision by a petition for a writ of certiorari.

## ISSUE

Did the ULJ err by determining that a portion of the settlement payment that Peterson received from her employer was a payment that renders her ineligible for unemployment benefits and must be deducted from the unemployment benefits that she has already received?

## ANALYSIS

This court may remand, reverse, or modify a decision of the ULJ if substantial rights of the applicant were prejudiced because the findings, conclusions, or decision are affected by an error of law or are unsupported by substantial evidence. Minn.Stat. § 268.105, subd. 7(d) (2010). We review a ULJ's factual findings in the light most favorable to the decision and will not disturb them when they are sustained by substantial evidence. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn.App.2006). We review de novo a ULJ's determination that an applicant is ineligible for unemployment benefits. *Sykes v. Nw. Airlines*, 789 N.W.2d 253, 255 (Minn.App.2010).

A determination of whether or not a particular payment constitutes wages may affect whether an applicant is eligible for unemployment benefits. Minn.Stat. § 268.085 (2010). First, an applicant is not eligible to receive unemployment benefits during any week for which she has received severance payments after separation from employment if those payments constitute wages and are equal to or in excess of her weekly benefit amount. *Id.*, subd. 3(a)(2). Second, when an applicant receives "back pay," which is a retroactive payment of money for lost wages, that amount must be deducted from unemployment benefits. *Id.*, subd. 6(a); *see* Minn. Stat. § 268.035, subd. 3 (defining back pay).

### Severance or other payment

We first address the ULJ's ruling that a portion of the settlement payment was for

wages in the form of severance pay. Minn.Stat. § 268.085, subd. 3(a)(2), provides that an applicant is not eligible for unemployment benefits for any week in which she is receiving, has received, or has filed a request for severance pay, bonus pay, sick pay, or other payments—but not deductible earnings or back pay—that is equal to or in excess of her weekly unemployment benefits. Further, these payments must be "paid by an employer because of, upon, or after separation from employment, but only if the payment is considered wages at the time of payment under section 268.035, subdivision 29." *Id.*

The ULJ found that, because the settlement agreement between Peterson and Northeast required Northeast to withhold taxes and issue a form W–2 for the $18,423 payment for unspecified damages, that payment constituted a severance or other payment under Minn.Stat. § 268.085, subd. 3(a)(2), and constitutes wages under Minn. Stat. § 268.035, subd. 29 (2010). Peterson disputes this determination, arguing that "[t]he mere fact that taxes were taken out [of] a portion of the settlement does not make that portion of the settlement for 'wages' or 'severance.'"

■ On appeal, DEED agrees with Peterson, as do we, that the ULJ erred by finding that the $18,423 payment for unspecified damages constituted a severance or other payment. The term "severance pay" is not defined in Minn.Stat. § 268.035, but caselaw defines it as "'[a] sum of money usually based on length of employment for which an employee is eligible upon termination.'" *Carlson v. Augsburg College*, 604 N.W.2d 392, 394–95 (Minn.App.2000) (quoting *The American Heritage Dictionary* 1652 (3d ed.1992)). In *Carlson*, the applicant was found to

have received severance pay, deductible under Minn.Stat. § 268.085, subd. 3(1) (1998) (the predecessor to the version at issue here), when he received a severance package in lieu of notice, which consisted of four and one-half month's salary paid at regular intervals, $2,000 for out-placement services, and $5,000 cash.[1] *Id.*

Nothing in the record before us here suggests that Peterson or Northeast intended for this $18,423 payment to function as severance pay or as any of the types of payments enumerated in Minn. Stat. § 268.085, subd. 3(a)(2). According to Peterson, the payment did not have any connection to her length of service at Northeast or a severance plan, and Northeast testified that the payment was in compensation for lost wages. We therefore decline to affirm on this ground, but do not yet reach the issue of whether the ULJ properly ruled that the payment also constitutes wages under Minn.Stat. § 268.035, subd. 29.

### Back pay

■ The next issue is whether the payment constitutes back pay. The ULJ did not reach this issue. Peterson argues, as she did at the hearing, that the $18,423 payment did not constitute wages but amounted to damages for emotional stress that she suffered. According to DEED, the $18,423 payment constitutes back pay, which is specifically excluded from Minn. Stat. § 268.085, subd. 3(a)(2), but must be deducted from unemployment benefits under Minn.Stat. § 268.085, subd. 6(a). DEED therefore contends that we should affirm the ULJ's decision on this alternative ground.

DEED's argument is persuasive. Wages are defined as "all compensation

1. Although the facts indicated that the $5,000 was part of the applicant's compensation package for 1998, the issue of whether this should be construed as back pay under Minn. Stat. § 268.085, subd. 6 (1998), was not raised or addressed. *Id.*

for services" and include, in relevant part, "back pay as of the date of payment." Minn.Stat. § 268.035, subd. 29(a). Minn. Stat. § 268.085, subd. 6(a), provides that "[b]ack pay received by an applicant within 24 months of the establishment of the benefit account with respect to any week occurring during the benefit year must be deducted from unemployment benefits paid for that week." In addition, Minn. Stat. § 268.035, subd. 3, defines "back pay" as "a retroactive payment of money by an employer to an employee or former employee for lost wages."

■ In the employment-discrimination context, the purpose of back pay is to make the former employee whole by compensating her for wages that she would have earned but for her former employer's wrongful conduct. *See Parrish v. Immanuel Med. Ctr.*, 92 F.3d 727, 735 (8th Cir. 1996) (explaining the purpose of back pay award for violation of the federal Age Discrimination in Employment Act). Thus, the question we must decide is whether Northeast's settlement payment of $18,423, from which taxes were withheld, compensated Peterson for the wages she lost as a result of Northeast's alleged discrimination, or whether it compensated her for emotional distress that she suffered.

The settlement agreement does not specifically state that Peterson was receiving back pay for lost wages. But in her complaint, Peterson stated that she was seeking compensation for emotional injuries *and* lost wages. And pursuant to the settlement agreement, Peterson received two payments of $18,423—one for alleged emotional injuries and one for unspecified damages. Because one of the $18,423 payments compensated Peterson for alleged emotional injuries, it follows that the other $18,423 payment was to compensate her for lost wages. We conclude that, read

together, Peterson's complaint and the settlement agreement indicate that the $18,423 payment for unspecified damages was compensation for lost wages.

The method of reporting the two payments for tax purposes further demonstrates that the $18,423 payment for unspecified damages was compensation for lost wages. In employment-discrimination cases, payments for nonphysical injuries due to emotional distress are reportable on Form 1099–MISC, whereas payments for back pay that constitutes wages are reportable on Form W–2. IRS Market Segment Specialization Program, *Lawsuits Awards & Settlements*, Training 3123–009 (11–00). Accordingly, the settlement agreement provided that one of the $18,423 payments—the one for alleged emotional distress—was to be reported on a form 1099—MISC, whereas the other $18,423 payment—the one for unspecified damages—was to be reported on a W–2 form. This distinction in the settlement agreement strongly suggests that the $18,423 payment for unspecified damages was, in fact, for lost wages.

Because the record demonstrates that the $18,423 for unspecified damages was compensation for lost wages, we conclude that, for any week in which Peterson received unemployment benefits, DEED was entitled to deduct the amount of back pay that Peterson received for that week. This determination not only comports with the plain language of the unemployment statute, but also with its underlying purpose of "preventing an employee's double recovery due to the receipt of both [back pay] and unemployment benefits." *Robertson v. Special Sch. Dist. No. 1*, 347 N.W.2d 265, 267 (Minn.1984). *See id.* (concluding that employer was entitled to offset amount of unemployment benefits received by discharged employee against amount of back pay to which employee was

statutorily entitled). To conclude otherwise would enable Peterson to recover twice for wages that she lost as a result of Northeast's alleged discrimination-once in the form of unemployment compensation and once in the form of the settlement payment.

***Period of time to which back pay was applied***

■ Minn.Stat. § 268.085, subd. 6(a), provides: "If the back pay is not paid with respect to a specific period, the back pay must be applied to the period immediately following the last day of employment." DEED argues that, in accordance with the statute, the deductions to Peterson's unemployment benefits must be applied to the period immediately following her last day of employment on August 4, 2009, not to the period from January 24, 2010 to July 24, 2010, as determined by the DEED adjudicator. DEED's position may have merit. But because this issue was not raised before the ULJ, it is not properly before this court on review. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988) (stating that an appellate court will not consider matters not argued to and considered by the district court). Moreover, because the record does not contain Peterson's notice of eligibility, it does not provide sufficient information from which this court can ascertain the period for which Peterson was receiving unemployment benefits and the period to which the deduction should be applied. *See id.* For these reasons, we decline to adjust the period of time to which the deductions have been applied.

## DECISION

On this record, we conclude that the $18,423 payment for unspecified damages constitutes back pay under Minn.Stat. § 268.035, subd. 3 and that DEED was entitled to deduct that payment from rela-

tor's unemployment benefits under Minn. Stat. § 268.085, subd. 6(a).