*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1876**

Sharon Anderson,
Relator,

vs.

YUM Design, LLC,
Respondent,

Department of Employment and Economic Development,
Respondent

**Filed July 25, 2016
Affirmed
Worke, Judge**

Department of Employment and Economic Development
File No. 33702439-4

Munazza Humayun, Prior Lake, Minnesota (for relator)

Patrick Gerard Knight, Berns Knight, P.A., Plymouth, Minnesota (for respondent employer)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Hooten, Presiding Judge; Worke, Judge; and Smith, Tracy M., Judge.

UNPUBLISHED OPINION

**WORKE**, Judge

Relator challenges an unemployment-law judge's (ULJ) decision that she is ineligible for unemployment benefits because she was discharged for the employment misconduct of starting a business competitive with her employer. We affirm.

## FACTS

Respondent-employer YUM Design, LLC runs a home-manager business and stages homes that are on the market. A home manager lives in a home while it is on the market to maintain upkeep and prepare it for sale. The staging business predictably follows the ebbs and flows of the real-estate market; some months are busier than others.

In August 2013, relator Sharon Anderson started as a home manager for YUM. Shortly thereafter, YUM's president, Karen Galler, enlarged the scope of Anderson's position. Because Anderson would have access to confidential information, she was required to sign a non-compete agreement, which she did in September 2013. By the latter part of 2014, Anderson was a secondary stager.

In December 2014, Anderson gave very little notice for a vacation, which inconvenienced YUM. After Anderson's vacation, Galler offered her less work because other people were available to do the work and she felt that Anderson was unhappy with the employment.

In early 2015, Galler saw an advertisement for a new staging business that included a picture of Anderson. On March 9, 2015, Galler asked Anderson to terminate her competing business. After Anderson stated that she had no intention of terminating

her business, Galler discharged Anderson and asked her to return the key she had to YUM's warehouse.

Anderson applied for unemployment benefits with respondent Department of Employment and Economic Development (DEED), claiming that she had been discharged for violating a non-compete agreement after seeking new work when her hours were reduced. DEED initially concluded that Anderson was eligible for unemployment benefits, and YUM appealed. A ULJ held a telephone hearing, with the stated purpose of gathering evidence to determine whether Anderson was discharged for employment misconduct.[1]

Anderson testified that she did not quit her employment; instead, "[Galler] just said she didn't want [her] anymore." Anderson testified that she started her staging business in February 2015, because business at YUM had significantly dropped. She also wanted more control of the business and her schedule. Despite acknowledging that she did staging at YUM and does staging for her own business, Anderson testified that she did not believe that she was a competitor because YUM also does the home-management program and her new business does not. Anderson also stated that Galler seemed to be focusing more on selling real estate than on staging, leading her to believe that Galler was going to discontinue staging altogether.

The ULJ found that Galler discharged Anderson on March 9, 2015, after Anderson refused to terminate her business that directly competed with YUM. The ULJ concluded

---

[1] The ULJ also considered whether Anderson was an employee or an independent contractor, but that is not at issue on appeal.

that Anderson was discharged for employment misconduct and ineligible for unemployment benefits.

Anderson requested reconsideration, arguing that the non-compete agreement was invalid and that she was not in competition with YUM because YUM "no longer had any viable staging business with which to compete." Anderson submitted "additional evidence," including a statement that she had been "effectively laid off" after working few hours in November 2014, and had been "constructively laid off . . . on December 1, 2014," after being offered only limited work. A ULJ noted the claims Anderson raised in her request for reconsideration, but determined that Anderson's decision to start a competitive business amounted to employment misconduct regardless of whether the non-compete agreement was valid because Anderson's conduct breached a duty of loyalty to her employer. The ULJ found Galler's testimony credible because it was "straightforward, direct, and certain"; conversely, the ULJ found Anderson's testimony "less certain" and "vague." Anderson petitioned for a writ of certiorari.

## D E C I S I O N

We may affirm, modify, or reverse the decision of the ULJ or remand the case for further proceedings if the substantial rights of the relator may have been prejudiced because the findings, inferences, or decision are unsupported by substantial evidence in the record, or are arbitrary or capricious. Minn. Stat. § 268.105, subd. 7(d)(5)-(6) (Supp. 2015).

We view the ULJ's factual findings in the light most favorable to the decision and will not disturb them provided that evidence substantially sustains them. *Rowan v.*

4

*Dream It, Inc.*, 812 N.W.2d 879, 882 (Minn. App. 2012). Substantial evidence is "(1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; (2) more than a scintilla of evidence; (3) more than some evidence; (4) more than any evidence; or (5) the evidence considered in its entirety." *Minn. Ctr. for Envtl. Advocacy v. Minn. Pollution Control Agency*, 644 N.W.2d 457, 466 (Minn. 2002). Credibility determinations are the exclusive province of the ULJ. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 345 (Minn. App. 2006).

### Issue raised

Anderson attempts to divert our attention from the issue of misconduct by suggesting that she was laid off. Anderson claims that "[t]he date of discharge means the difference between eligibility and ineligibility"—if she was laid off in early February 2015, she is eligible for unemployment benefits, but if she was discharged on March 9, 2015, for starting a competing business, she is ineligible for unemployment benefits. She claims that she is eligible for unemployment benefits because "[t]here is not even a scintilla of evidence in the record to support the ULJ's finding that the discharge occurred on March 9, 2015." Based on the record before us, there are two problems with Anderson's claim.

First, Anderson is incorrect in asserting that there is no evidence to support the ULJ's finding that she was discharged on March 9, 2015. Galler testified that she ended the working relationship on March 9, 2015, after Anderson refused to terminate her competing business. Moreover, Anderson testified that she did not quit her employment—Galler "just said she didn't want [her] anymore." Anderson did staging

work in January and February and received checks in both months, but did not do any more staging work after March 9. There is substantial evidence to support the ULJ's finding that Anderson was discharged on March 9, 2015.

Second, Anderson failed to raise the issue of being laid off at the hearing before the ULJ.[2] When she applied for unemployment benefits, Anderson claimed that she was discharged after she was accused of violating a non-compete agreement. While she also claimed that she needed to start a business because her hours had been reduced, she never claimed that she was laid off and had no work available.

Additionally, the ULJ made clear at the hearing that the issue was whether Anderson was discharged for employment misconduct. The ULJ did not state, and Anderson did not suggest, that the ULJ was to decide whether Anderson had been laid off.

At the hearing, Anderson testified that she started her staging business in February 2015 because business at YUM had significantly dropped and Galler appeared to be focused on selling real estate. But, again, she did not claim that she had been laid off. And Galler explained that she gave Anderson less work because Anderson had given short notice to take a vacation and seemed unhappy.

In her request for reconsideration, Anderson claimed that she had "additional evidence," including a statement that she had been "effectively laid off" after working few hours in November 2014, and had been "constructively laid off . . . on December 1,

---

[2] Though this issue was not raised before the ULJ, we examine the claim because it is indirectly linked to the issue of when Anderson was discharged from employment.

6

2014." In her brief, she states that she was "seasonally laid off . . . in early February 2015." Not only are her statements unclear as to when she was laid off—November, December, or February—but the record shows that she continued to work in January and February, received checks in both months, and started her staging business only two days after receiving her last check. Moreover, although Anderson raised the issue of being laid off in her request for reconsideration, she offers no explanation as to why she failed to raise the issue at the hearing before the ULJ.

Thus, because Anderson failed to raise the claim that she was laid off at the evidentiary hearing, the ULJ did not consider it or make relevant findings, and we, therefore, will not consider it on appeal. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (stating that an appellate court will not consider matters not argued to and considered by the district court); *Peterson v. Ne. Bank–Minneapolis*, 805 N.W.2d 878, 883 (Minn. App. 2011) ("[B]ecause this issue was not raised before the ULJ, it is not properly before this court on review.").

### *Misconduct*

Our sole issue to resolve is whether the ULJ erred in determining that Anderson was discharged for employment misconduct. Employment misconduct is "any intentional, negligent, or indifferent conduct, on the job or off the job that displays clearly . . . a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee." Minn. Stat. § 268.095, subd. 6(a)(1) (2014). An employee discharged for employment misconduct is ineligible to receive unemployment benefits. *Id.*, subd. 4(1) (2014).

7

Whether an employee committed misconduct is a mixed question of fact and law. *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn. 2002). "Whether the employee committed a particular act is a question of fact." *Skarhus*, 721 N.W.2d at 344. But whether an employee's act constitutes disqualifying misconduct is a question of law, which we review de novo. *Schmidgall*, 644 N.W.2d at 804.

The ULJ found that Anderson started a business competitive with her employer. There is no dispute that Anderson started a business. We must determine whether that act constitutes employment misconduct.

"A single incident can constitute misconduct when an employee deliberately chooses a course of conduct that is adverse to the employer." *Id.* at 806. An employer has a legitimate interest in protecting itself against "the deflection of trade or customers by the employee by means of the opportunity which the employment has given him." *Webb Publ'g Co. v. Fosshage*, 426 N.W.2d 445, 450 (Minn. App. 1988) (quotation omitted). An employee owes a duty of loyalty to the employer that prohibits the employee from competing with the employer during the employment. *Rehab. Specialists, Inc. v. Koering*, 404 N.W.2d 301, 304 (Minn. App. 1987).

Anderson testified that she did not believe that her staging business was in competition with YUM because YUM also does the home-management program and her business does staging only. She also believed that she was not in competition because, according to Anderson, Galler appeared to be focusing more on selling real estate and less on staging. But Galler testified that Anderson's claims were "absolutely ridiculous." Galler testified that she had no intention of terminating the staging business just because

8

the real-estate market, and so too the staging business, are slower in January and February. The ULJ found Galler's testimony to be credible. *See Skarhus*, 721 N.W.2d at 345.

The evidence supports the ULJ's finding that Anderson was discharged for starting a business that was a direct competitor of her employer. This reason for discharge is employment misconduct that makes an individual ineligible for unemployment benefits.

**Affirmed.**