*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-0928**

Kirstin Arneson,
Relator,

vs.

St Cloud Auto Sales.Com LLC,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed March 16, 2026**
**Affirmed**
**Bratvold, Judge**

Department of Employment and Economic Development
File No. 51081777-4

Richard Dahl, Dahl Law Firm PA, Brainerd, Minnesota (for relator)

St. Cloud Auto Sales.Com LLC, St. Cloud, Minnesota (respondent employer)

Rebecca Wittmer, Melannie M. Markham, Department of Employment and Economic
Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Bentley, Presiding Judge; Bratvold, Judge; and Schmidt,

Judge.

**NONPRECEDENTIAL OPINION**

**BRATVOLD**, Judge

On certiorari review, relator challenges the decision of an unemployment-law judge

(ULJ) that relator is ineligible for unemployment benefits because she was discharged for

employment misconduct. Relator argues that the ULJ's decision must be reversed for four reasons: (1) the decision was not supported by substantial evidence; (2) relator's conduct falls under certain statutory exceptions to employment misconduct; (3) the ULJ based its determination on a single incident of misconduct; and (4) relator's employer discharged her as a pretext for age discrimination. We conclude that substantial evidence supports the ULJ's misconduct determination, relator's conduct does not fall under any of the statutory exceptions relator cites, relator's conduct was a serious violation of her employer's reasonable expectations, and relator failed to raise a claim of age discrimination in proceedings before the ULJ and therefore forfeited the issue. Thus, we affirm.

**FACTS**

The following summarizes the ULJ's factual findings and decision issued after an evidentiary hearing and a motion for reconsideration, along with other evidence relevant to the issues on appeal.

Relator Kirstin Arneson worked as a finance manager for respondent St. Cloud Auto Sales.com LLC from January 9 to September 18, 2024. Arneson worked full-time at the Brainerd branch. Before working at St. Cloud Auto, Arneson worked as a finance manager for a recreational-vehicle dealership.

On July 26, 2024, a customer told a salesperson he wanted to buy a pickup truck and "paid a $5,000 deposit in cash, which was given to Arneson." Arneson then "counted the cash in front of the [pickup] customer and the salesperson, put it in an envelope, wrote identifying information . . . on the envelope, taped the envelope shut, and signed over the tape." Arneson testified that she asked the pickup customer if he wanted a receipt and he

2

said "it was fine." Arneson admitted that she did not provide the pickup customer with a receipt. The ULJ also found that Arneson did not "create any other written record of the deposit payment other than what was written on the envelope."

At the Brainerd branch, "[c]ash deposits were to be placed in a bank envelope that was locked, and the bank envelope was to be kept in Arneson's office, where the key to the bank envelope was kept." Based on testimony from the branch's general manager, the ULJ found that "Arneson was to keep her office locked when she was not in it" and that only Arneson, the general manager, and the service manager had keys to the office. Arneson testified that the Brainerd branch did not have a "receipt book" or a safe and that she thought there should have been a safe for storing deposits. Arneson admitted, as discussed in more detail below, that she did not keep her office locked during the workday.

Delivery drivers transported bank envelopes from the Brainerd branch to the St. Cloud office five days a week. Employees at the St. Cloud office then "unlocked and handled [bank envelopes] within view of security cameras." Delivery drivers "did not have keys to the bank envelopes."

The week after the pickup customer left the cash deposit, the St. Cloud office received a bank envelope from the Brainerd branch "that should have had the $5,000 cash deposit in it, and other deposits were in the bank envelope, but the $5,000 cash deposit was missing." The ULJ found that the fact the deposit was missing "was not discovered for weeks," in part because the pickup customer "did not come back right away." The general manager of the Brainerd branch testified that it was impossible to review security-camera

3

footage from around the time the St. Cloud office received the bank envelope because the footage is "only kept for a certain period of time."

On September 18, 2024, St. Cloud Auto discharged Arneson. The next day, Arneson applied for unemployment benefits. Respondent Minnesota Department of Employment and Economic Development (DEED) determined that Arneson was ineligible for benefits because St. Cloud Auto discharged her for employment misconduct. Arneson administratively appealed.

At the resulting evidentiary hearing, the ULJ heard testimony from Arneson and St. Cloud Auto employees, including a human-resources assistant and a general manager at the Brainerd branch. The ULJ also received exhibits, including emails and text messages. The ULJ issued their decision, including written findings of fact, and determined that Arneson was ineligible for unemployment benefits because she was discharged for employment misconduct. The ULJ made credibility determinations, noting that the "findings of fact are based primarily on the employer's witnesses' testimony and the portions of Arneson's testimony that were credible because they were candid and consistent with the other evidence."

The ULJ first found that there was insufficient evidence to determine "who took the $5,000 cash deposit, given that more people than just Arneson reasonably could have accessed the bank envelope." But the ULJ also found that "Arneson knew that if a deposit was paid by a customer, there should be documentation of receipt of the deposit for both the customer and the business," yet Arneson did not give the pickup customer a receipt or otherwise document the deposit. The ULJ also found that, despite St. Cloud Auto's policy

4

that she lock her office when she was absent, "Arneson locked her office at the end of her workday, but she did not typically lock it when, for example, she took breaks during the workday." The ULJ concluded that Arneson's failure to document receipt of the missing $5,000 deposit and to lock her office where the deposits were kept "was at least negligent and was a serious violation of reasonable expectations" of St. Cloud Auto. The ULJ concluded that St. Cloud Auto discharged Arneson "because of the missing $5,000 deposit issue and a previous incident in which Arneson had signed a customer's name to a document" when she was not authorized to do so.

Arneson filed a request for reconsideration without offering new evidence. She argued, among other things, that her conduct falls under statutory exceptions to employment misconduct and that she was discharged for a single incident. In a written decision, the ULJ affirmed its ineligibility decision, concluding that it was "factually and legally correct." The ULJ considered and rejected each of Arneson's arguments, reasoning, in part, that her failure to issue a receipt for the missing $5,000 cash deposit and to lock the office "was intentional." The ULJ also concluded that the record evidence showed that St. Cloud Auto discharged Arneson for two instances of misconduct—the missing $5,000 deposit and the "prior incident" involving an unauthorized signature.

This appeal follows.

## DECISION

When reviewing a ULJ's decision regarding eligibility for unemployment benefits, this court may affirm or remand for further proceedings. Minn. Stat. § 268.105, subd. 7(d) (2024). Alternatively, this court may reverse or modify a ULJ's decision if, among other

5

things, the eligibility determination is "unsupported by substantial evidence." *Id.*, subd. 7(d)(5). Substantial evidence is "(1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; (2) more than a scintilla of evidence; (3) more than some evidence; (4) more than any evidence; or (5) the evidence considered in its entirety." *Dourney v. CMAK Corp.*, 796 N.W.2d 537, 539 (Minn. App. 2011) (quotation omitted).

An individual who is discharged for employment misconduct is not eligible to receive unemployment benefits. Minn. Stat. § 268.095, subd. 4(1) (2024); *see also Wichmann v. Travalia & U.S. Directives, Inc.*, 729 N.W.2d 23, 27 (Minn. App. 2007). Whether an individual committed employment misconduct is a mixed question of law and fact. *Stagg v. Vintage Place Inc.*, 796 N.W.2d 312, 315 (Minn. 2011). We view "the ULJ's factual findings in the light most favorable to the decision, giving deference to the credibility determinations made by the ULJ," and "we will not disturb the ULJ's factual findings when the evidence substantially sustains them." *Ward v. Delta Airlines*, 973 N.W.2d 649, 651 (Minn. App. 2022) (quotation omitted), *rev. denied* (Minn. June 21, 2022). "Determining whether a particular act constitutes disqualifying misconduct is a question of law that we review de novo." *Stagg*, 796 N.W.2d at 315.

Arneson argues that the ULJ's decision was (A) not supported by substantial evidence and that, (B) even if it was, her conduct related to the missing $5,000 deposit falls under statutory exceptions and (C) was only a single incident. Arneson also contends that (D) St. Cloud Auto discharged her as a pretext for age discrimination. We address each argument in turn.

6

### A.     Substantial Evidence of Employment Misconduct

"Employment misconduct means any intentional, negligent, or indifferent conduct, on the job or off the job, that is a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee." Minn. Stat. § 268.095, subd. 6(a) (2024).

Here, the ULJ concluded that St. Cloud Auto "has the right to reasonably expect that a finance manager will appropriately handle funds." The ULJ found that "the credible evidence" shows that Arneson "failed to create [an] appropriate record of ever having received the [missing $5,000] cash deposit" and that Arneson "admittedly knew that it was standard practice to give the customer some sort of receipt whenever a deposit was made." The ULJ also found that, based on Arneson's testimony that the Brainerd branch should have had a safe for storing customer deposits in her office, Arneson "should have known that she should keep her office locked whenever she wasn't in it." The ULJ found:

> Arneson's conduct in failing to document receipt of the deposit other than what she put on the bank envelope contributed to the disappearance of the deposit not being discovered for weeks, and her conduct in . . . failing to keep the bank envelope secure by keeping her office locked likely either directly caused, or created opportunity for, the loss of the deposit.[1]

---

[1] The ULJ briefly referred in this passage to Arneson "stealing the deposit herself." Because the ULJ concluded, based on substantial evidence, that there was insufficient evidence to determine who took the missing $5,000 deposit, we omit the ULJ's brief reference and do not consider it further.

The ULJ concluded that "Arneson's conduct in handling the $5,000 cash deposit was at least negligent and was a serious violation of [St. Cloud Auto's] reasonable expectations."[2]

We first consider whether there was substantial evidence that Arneson negligently violated St. Cloud Auto's expectations, then we consider whether those expectations were reasonable under Minnesota caselaw.

### The Evidence of Arneson's Conduct

"Negligence is the failure to use the care that a reasonable person would use in the same or similar circumstances." *Dourney*, 796 N.W.2d at 540. Generally, an employee who refuses "to abide by an employer's reasonable policies and requests" has engaged in "disqualifying misconduct." *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn. 2002).

Arneson contends that substantial evidence does not support the ULJ's determination that her conduct was at least negligent and a serious violation of St. Cloud Auto's expectations. Arneson maintains that she "did create her own receipt" for the $5,000 cash deposit, "but she could not shove the receipt in the customer's ear if they refused repeatedly." DEED counters that Arneson "intentionally failed to issue a receipt, or provide any documentation, for a cash deposit" and "did not always keep her office locked."

We reject Arneson's argument that substantial evidence does not support the ULJ's negligence determination. First, Arneson acknowledged in her testimony that St. Cloud

---

[2] Because the statutory standard for employment misconduct is satisfied with negligent conduct, we need not consider whether substantial evidence supports the ULJ's finding of intentional conduct in their reconsideration decision.

8

Auto usually documents receipt of cash deposits on "an actual purchase agreement that was signed" by a customer, but no purchase agreement was prepared for the missing $5,000. Second, the ULJ implicitly rejected Arneson's testimony that she "did write out" a receipt for the missing $5,000 as not credible and found that Arneson did not document receipt of the missing $5,000. We defer to the ULJ's credibility determination. *Ward*, 973 N.W.2d at 651. Third, Arneson testified that she kept deposits received—including the missing $5,000—in her office and knew that St. Cloud Auto expected her to keep her office locked when she was not in it. Yet Arneson admitted that she only locked her office at the end of the workday and not when she "was at the store" or "just ran to the gas station or something." Because Arneson's testimony shows that she failed "to use the care that a reasonable person would use in the same or similar circumstances," we conclude that substantial evidence supports the ULJ's determination that Arneson's conduct was at least negligent and a serious violation of St. Cloud Auto's expectations. *Dourney*, 796 N.W.2d at 540.

### The Reasonableness of St. Cloud Auto's Expectations

"An employer has a right to expect that its employees will abide by reasonable instructions and directions." *Vargas v. Nw. Area Found.*, 673 N.W.2d 200, 206 (Minn. App. 2004), *rev. denied* (Minn. Mar. 30, 2004). What qualifies as a "reasonable" policy or request "will vary according to the circumstances of each case." *Id.* (quotation omitted).

Arneson appears to argue that St. Cloud Auto unreasonably expected her to document deposits and to lock her office when she was absent. Arneson maintains that St. Cloud Auto held her "to the highest standard of care for taking care of the money

9

without even providing a safe or receipt book or the like." DEED counters that St. Cloud Auto "had the right to reasonably expect Arneson to follow its cash-handling procedures" and that "[c]reating documentation for cash received by a car dealership is essential to the employer's accounting."[3]

In *McDonald v. PDQ*, McDonald was discharged "for violating a company policy requiring cashiers to ring up purchases immediately." 341 N.W.2d 892, 893 (Minn. App. 1984). When McDonald disputed his ineligibility for unemployment benefits, he was found "guilty of misconduct disqualifying him from benefits." *Id.* On review, this court noted that McDonald "knew about the policy" because it was included in his orientation materials and emphasized by management at an employee meeting less than a month before McDonald's violation. *Id.* This court affirmed the employment-misconduct determination, concluding that McDonald's conduct showed a "substantial disregard" for the employer's interest because an "employer has the right to expect scrupulous adherence to procedure by employees handling the employer's money." *Id.*

Here, the general manager testified that the Brainerd branch's procedure for handling cash deposits was to "collect the cash" from the customer, count it, place it "in a sealed envelope," "sign over the seal," and send it "to the St. Cloud office in a locked bag." And the branch "[u]sually" gave the customer "a receipt of cash received." The locked bank envelope and its key were kept in the finance manager's office, and the general manager agreed that the office was "supposed to be kept locked when the finance manager

---

[3] DEED does not address whether it was reasonable for St. Cloud Auto to expect Arneson to lock her office when she was absent.

[was] not in it." The general manager explained that it was "common practice" to prepare a receipt for a cash deposit and to give it to the customer. Similarly to our reasoning in *McDonald*, we conclude that St. Cloud Auto had reasonable policies on preparing written receipts and locking Arneson's office. St. Cloud Auto "has the right to expect scrupulous adherence to a procedure by employees handling" its money. *See id.*

Arneson makes four other arguments challenging the reasonableness of St. Cloud Auto's expectations. First, Arneson argues that St. Cloud Auto's receipt policy was unreasonable because she was a finance manager—not a formal "controller"—and "had no college degree" or "accounting license." But Arneson was the finance manager for the Brainerd branch and her responsibilities included properly handling cash deposits. Arneson also testified that, when she was previously employed as a finance manager at another dealership, she would write a receipt for "every single deposit by hand" in a receipt book and "would give the customer a copy." Thus, St. Cloud Auto's expectation that Arneson would prepare receipts for deposits was not unreasonable given her role and experience.

Second, Arneson argues that there was "no foundation laid in the recorded record . . . for a formal policy regarding receipts" for cash deposits. But a "formal" or written policy is not necessary to establish an employer's reasonable expectations. *Brown v. Nat'l Am. Univ.*, 686 N.W.2d 329, 333 (Minn. App. 2004), *rev. denied* (Minn. Nov. 16, 2004). Here, the testimony was undisputed about St. Cloud Auto's policies for documenting receipt of deposits and locking Arneson's office.

Third, Arneson contends that, if "she continued to demand that proper paperwork be completed" for the pickup customer, then "a valuable sale would be lost, and the

11

customer would take his money and leave." Arneson points to no evidence or authority to support this contention and does not explain how her drafting a receipt would require the pickup customer to do any paperwork. Therefore, we reject this argument. *See State Dep't of Labor & Indus. by Special Comp. Fund v. Wintz Parcel Drivers, Inc.*, 558 N.W.2d 480, 480 (Minn. 1997) (stating that appellate courts may decline to reach issues that are inadequately briefed).

Fourth, Arneson maintains that her "failure to provide a receipt to the customer did not contribute to the disappearance of the deposit (or the fact it was not timely discovered)." The record shows, however, that St. Cloud Auto did not discharge Arneson because the cash deposit was missing. Rather, she was discharged for not documenting the deposit and for leaving her office unlocked and unattended.

In sum, we conclude that substantial evidence supports the ULJ's determination that Arneson's negligent conduct was a serious violation of the standard of behavior St. Cloud Auto reasonably expected.

## B. Statutory Exceptions

There are ten statutory exceptions to the definition of employment misconduct. Minn. Stat. § 268.095, subd. 6(b) (2024). In her request for reconsideration, Arneson asserted four exceptions and argued that she was eligible for unemployment benefits notwithstanding her alleged violations of St. Cloud Auto's reasonable expectations. Arneson argued that her conduct was (1) "a consequence of [her] inefficiency or inadvertence"; (2) "simple unsatisfactory conduct"; (3) "conduct an average reasonable

12

employee would have engaged in under the circumstances"; and (4) the result of "good faith errors in judgment if judgment was required." *Id.*, subd. 6(b)(2)-(4), (6).

On reconsideration, the ULJ rejected the statutory exceptions Arneson asserted, for three reasons. The ULJ found that (1) "Arneson did not forget to document the deposit" so there was no inefficiency or inadvertence; (2) "[n]o judgment is needed for an experienced finance manager to know" that documentation was needed for the deposit; and (3) an "average, reasonable finance manager at a car dealership would have documented receipt of the deposit." As discussed above, substantial evidence supports each of the ULJ's findings.

Arneson reasserts the same four exceptions on appeal. DEED responds that, among other things, Arneson did not make a good-faith error in judgment because she "did not have a choice to make in whether or not to issue receipts for payments made."

In her brief to this court, Arneson offers no analysis or authority to support her claims that these exceptions apply to her situation. An appellant waives an assignment of error in a brief based on "mere assertion" and not supported by argument or authority unless prejudicial error is obvious on mere inspection. *Schoepke v. Alexander Smith & Sons Carpet Co.*, 187 N.W.2d 133, 135 (Minn. 1971). Because prejudicial error is not obvious upon mere inspection and substantial evidence supports the ULJ's findings on these exceptions, Arneson is not entitled to relief based on these alleged errors.

### C.    Single Incident

A single incident may be sufficient to establish misconduct. *Wilson v. Mortg. Res. Ctr., Inc.*, 888 N.W.2d 452, 463 (Minn. 2016). But when an applicant is discharged for

conduct that "involved only a single incident, that is an important fact that must be considered in deciding whether the conduct rises to the level of employment misconduct." Minn. Stat. § 268.095, subd. 6(d) (2024).

On reconsideration, the ULJ recognized that "even a single incident can amount to employment misconduct if it is a serious violation of a reasonable expectation" and concluded that "[m]ishandling a $5,000 cash deposit is serious." And in its initial order, the ULJ found that the record evidence supported a finding that, in a separate prior incident, Arneson signed a customer's name to a document without authority to do so. The ULJ, therefore, found a second incident.[4]

We need not consider the ULJ's findings on the second incident. Even if we assume, without deciding, that Arneson's discharge was based solely on her conduct related to the missing $5,000 cash deposit and that this was a single incident—notwithstanding that Arneson regularly violated her employer's policy that she keep her office door locked when she was not present—we nonetheless conclude that she engaged in employment misconduct. The ULJ concluded that the single incident involving the missing $5,000 cash deposit was sufficient. We agree that Arneson's misconduct related to the missing $5,000

---

[4] The ULJ determined that Arneson was not discharged for a single incident because "the employer's witnesses testified about a prior incident that was also part of the reason for the discharge." Arneson "had signed a customer's name to a document that could not be signed by anyone other than the customer and without a notarized power of attorney form on file." On appeal, Arneson argues that the unauthorized-signature incident was "frivolous" and should not be "considered a second incident" because it was "forgotten by the employer" before she was discharged. DEED counters that "Arneson was not discharged for the cash handling incident alone, but also because she forged a customer's signature on a document." For the reasons stated below, we need not resolve this dispute.

cash deposit was a serious violation and amounted to employment misconduct. *See Wilson*, 888 N.W.2d at 463 (concluding that a single incident of misrepresentation was employment misconduct because it was a "serious violation").

### D.     Age Discrimination

On appeal, Arneson argues for the first time that the evidence shows that the pickup customer and salesman "set up [Arneson] for an alleged theft of the money to take her job." She contends that St. Cloud Auto identified two incidents as "a pretext" to discharge Arneson and replace her with "a much younger salesman." Arneson cites, among other things, a text message from the general manager explaining that Arneson was discharged because he "was told we are moving [in] a different direction and to find a replacement." DEED argues that Arneson "forfeited this argument" because she did not raise it in proceedings before the ULJ.

Appellate courts generally decline to consider issues not argued to and considered by a ULJ. *Peterson v. Ne. Bank-Minneapolis*, 805 N.W.2d 878, 883 (Minn. App. 2011) (citing *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988)). Because Arneson did not assert age discrimination at the hearing or in her request for reconsideration, we decline to consider the issue on appeal.

**Affirmed.**